954 F.2d 1125
 Fed. Sec. L. Rep. P 96,584, RICO Bus.Disp.Guide 7957
 Michael K. TOPALIAN, Don W. Boyett, Bobby McDonald, MJM
Ventures, Richard H. Manuel, Jack E. Borroughs and
Charles W. Anderson, Plaintiffs-Appellants,
v.
John N. EHRMAN, Rockwood Insurance Company, et al.,
Defendants-Appellees.
Michael K. TOPALIAN, Warren B. Fienga, Richard H. Manuel,
Don W. Boyett, Bobby W. McDonald, Charles F.
Lacelle and MJM Ventures,
Plaintiffs-Counter Defendants-Appellants,
v.
John N. EHRMAN, Etc., et al., Defendants,
Ehrman Investment Group, Inc., Defendant-Counter Plaintiff-Appellee,
and
Onshore Exploration Ltd. 1984 Mid-Year Drilling Program,
Counter Plaintiff-Appellee.
Michael K. TOPALIAN, et al., Plaintiffs-Appellants,
v.
John N. EHRMAN, Individually, Etc., et al., Defendants-Appellees.
 Nos. 90-2104, 90-2105 and 90-2106.
 United States Court of Appeals,
Fifth Circuit.
 March 6, 1992.
Rehearing and Rehearing En Banc
Denied April 7, 1992.
As Amended April 27, 1992.
 
 Armando Lopez, Lopez & Ramirez, Houston, Tex., W. Sherman Rogers, Washington, D.C., Gillis & Slogar, Houston, Tex., for Michael K. Topalian et al.
 Don Jackson, Paul S. Wells, Vinson & Elkins, Houston, Tex., for Houston Petroleum Corp. & Richard O'Donnell.
 Stephen W. Schueler, Charles M. Silverman, Neil A. Wasserstrom, Margraves, Kennerly & Schueler, Frank Pinedo, James Austin Pinedo, Pinedo, Cezeaux & Sweeney, Houston, Tex., for Rio Bravo Oil and Bert Gamble.
 W. Roderick Johnson, Butler & Binion, Kevin F. Risley, Houston, Tex., for W. Roderick Johnson.
 John R. Knight, Morris & Campbell, Houston, Tex., for Robert E. Eckis, Jr.
 Frank Pinedo, James Austin Pinedo, Pinedo, Cezeaux & Sweeney, Houston, Tex., for counter plaintiff-appellee in No. 90-2105.
 Kevin F. Risley, Butler & Binion, Houston, Tex., for Rockwood Ins.
 Frank Pinedo, James Austin Pinedo, Pinedo, Cezeaux & Sweeney, Houston, Tex., for Ehrman and Ehrman Inv. Group in No. 90-2106.
 W. Roderick Johnson, Houston, Tex., for W.R. Johnson and W.R. Johnson, P.C. in No. 90-2106.
 Don Jackson, Vinson & Elkins, Houston, Tex., for O'Donnell and Houston Petroleum.
 Dale Jefferson, D. John Leger, Houston, Tex., for Victor Russek and Russek Co.
 Stephen W. Schueler, Neil A. Wasserstrom, Charles M. Silverman, Margraves, Kennerly & Schueler, Houston, Tex., for Bert Gamble and Rio Bravo Oil Co. in Nos. 90-2105 & 90-2106.
 Appeals from the United States District Court for the Southern District of Texas.
 Before DUHE, WILLIAMS, and GARZA, Circuit Judges.
 EMILIO M. GARZA, Circuit Judge:
 
 
 1
 Onshore Exploration Ltd. ("Onshore") is a Texas limited partnership formed to engage in oil and gas drilling ventures. On December 3, 1987, plaintiffs--fifteen out of seventy-seven Onshore investors--brought this action against twenty-three defendants.[1] Plaintiffs, alleging that they suffered damages as a result of the offer and sale to them of limited partnership interests in Onshore and that they are the victims of a conspiracy in which all defendants participated, sought damages under:
 
 
 2
 (i) sections 12(1) and 12(2), 15 and 17(a) of the Securities Act of 1933, as amended [15 U.S.C. §§ 77l(1)-(2), 77o, 77q(a) (1988) ];
 
 
 3
 (ii) section 10(b) of the Securities Exchange Act of 1934, as amended [15 U.S.C. § 78j(b) (1988) ] and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-50);
 
 
 4
 (iii) the Racketeer Influenced and Corrupt Organization Act (RICO) [18 U.S.C. § 1964(c) (1988) ];
 
 
 5
 (iv) the Texas Securities Act [Tex.Rev.Civ.Stat.Ann., art. 581-33 (West Supp.1987) ]; and
 
 
 6
 (v) common law fraud and deceit, breach of fiduciary duty and "other conduct alleged to be in violation of the laws of the State of Texas."[2]
 
 
 7
 The district court, finding no material fact issues in dispute, granted defendants' motion for summary judgment. Plaintiffs now appeal from that judgment seeking:
 
 
 8
 (i) reversal of the district court's summary judgment in favor of defendants;
 
 
 9
 (ii) removal to a new court; and, ultimately,
 
 
 10
 (iii) rescission of the transactions resulting in purchase of investment units;
 
 
 11
 (iv) treble damages under RICO;
 
 
 12
 (v) imposition of a constructive trust;
 
 
 13
 (vi) appointment of a receiver;
 
 
 14
 (vii) costs and attorney's fees; and
 
 
 15
 (viii) "other relief as may be just and proper."
 
 
 16
 Concluding that plaintiffs have failed to set forth specific facts and establish a genuine issue worthy of trial, we affirm the district court's summary judgment in favor of defendants.
 
 
 17
 * A
 
 
 18
 Onshore was formed in September 1984 under Texas law for the purpose of raising funds for oil and gas drilling ventures. The enterprise was presented to potential investors as a tax shelter and a sound, legitimate investment vehicle. On September 26, 1984, Onshore entered into a Joint Venture Agreement with Defendant Houston Petroleum Company ("HPC"), Onshore agreeing to use its best efforts to raise a minimum subscription of $3,600,000 in capital contributions on or before December 31, 1984.
 
 
 19
 The defendants, general partners of Onshore, decided to raise this 3.6 million dollars by selling limited partnership units. Onshore actively began to solicit investors in November 1984. According to plaintiffs, Onshore's general partners represented to prospective investors that the Onshore offering was exempt from registration under the Security and Exchange Commission's Rule 506 of Regulation D. See 17 C.F.R. § 230.506 (1989).[3] This Rule 506 exemption to the registration requirements of section 5 of the Securities Act of 1933 is limited to offerings made to not more than 35 non-accredited investors. See id. Although the Onshore offering was made primarily to accredited investors, defendants and their seller-agents allegedly offered and sold the Onshore securities to more than 35 non-accredited investors.
 
 
 20
 In their effort to obtain adequate financing, defendants printed at least two different offering memoranda, one dated September 30, 1984 and another dated November 30, 1984.[4] The November 30, 1984 memorandum stated that the offering termination date--the date by which the partnership needed to raise a minimum subscription of $3,600,000 in capital contributions--was December 31, 1984.[5] As that deadline approached, defendants were short of the minimum subscriptions required to continue the partnership. Rather than dissolving the partnership and reimbursing the limited partners as promised in the original offering memoranda, in January 1985 Onshore forwarded a document to each investor who had subscribed on or before December 31, 1984 which permitted each subscriber to rescind or affirm her respective purchase of Onshore interests. To compensate for Onshore's subscription deficiency, the general partners then allegedly decided to pledge the limited partners' promissory notes as security for a bank loan made to Onshore by Interdiscount Ltd. ("IDL") and guaranteed by Ehrman Investment Group, Ltd. ("EIG").[6] These loan proceeds were allegedly spent financing the Onshore venture.
 
 B
 
 21
 Plaintiffs filed their original complaint on December 3, 1987. On December 18, 1987, they filed their first amended complaint, alleging that, with the help of others, Onshore's general partners--EIG and W. Roderick Johnson--engaged in a scheme to defraud them in the sale of Onshore limited partnership securities.
 
 
 22
 Defendants filed motions to dismiss, and, with the exception of claims brought under section 17 of the Securities Act of 1933, the district court denied these motions. Plaintiffs were directed to amend their complaint to specifically refer to the defendants against whom allegations were being made and comply with the court's RICO standing order. Discovery commenced. In August 1988, plaintiffs filed their Second Amended Complaint, which the district court struck.[7] In September 1988, plaintiffs filed a Motion for Leave to File a Second Amended Complaint or in the Alternative a Motion for Joinder of Persons Needed for Just Adjudication. In October 1988, the district court held a pre-trial conference on matters including this motion--a motion the district court ultimately denied.
 
 
 23
 In January 1989, the court considered a joint motion to amend the scheduling order of August 1988, and extended the discovery cut-off date to April 1989. At this January hearing, the court admonished all counsel to cooperate in discovery and reserved a ruling on pending motions for sanctions. The court set July 28, 1989 for the hearing and disposition of pending motions.
 
 
 24
 Defendants filed motions for summary judgment on June 15, 1989. Although responses to these motions were due on July 10, 1989, plaintiffs did not file their responses until July 27, 1989. Plaintiffs were also late in filing their motions for summary judgment. In October 1989, the district court granted summary judgment in favor of the Ehrman defendants and against plaintiffs. In December 1989, the district court first granted summary judgment in favor of EIG, Onshore, and Rockwood on their counterclaims against certain plaintiffs. Later that same month, the district court entered its final judgment, granting summary judgment to all the remaining defendants. The district court also held a hearing on pending motions for sanctions and granted defendants' motion for sanctions against some of the plaintiffs and against their counsel, Mr. Armando Lopez.
 
 II
 
 25
 Plaintiffs seek reversal of the district court's grant of summary judgment, and they have pinned a tail of reversible-error assertions to this summary judgment challenge.[8] Defendants deny plaintiffs' allegations, and they allege that even if the facts were true, plaintiffs' causes of action are time-barred by (i) the one and three-year statutes of limitations applicable to claims brought under the Securities Act of 1933, (ii) the two-year statute of limitations applicable to claims under the Securities Exchange Act of 1934, and (iii) the fact that plaintiffs failed to state a claim under RICO. Some of the defendants deny participating in the offer and sale of the units, and they further deny that they had any fiduciary or other duty to any of the plaintiffs.
 
 
 26
 This case is the product of consolidation.[9] We have diligently sorted through the numerous bundles of issues the parties have toted before us, and our efforts have resulted in six groupings:
 
 
 27
 (a) Did the district court err in granting defendants' motions for summary judgment?
 
 
 28
 (b) Did the district court err in granting defendants' motions for summary judgment on the counterclaims against plaintiffs?
 
 
 29
 (c) Did the district court err in denying plaintiffs' Motion to File a Second Amended Complaint or, in the Alternative, a Motion for Joinder of Persons Needed for Just Adjudication?
 
 
 30
 (d) Did the district court dismiss IDL as a party solely as a Rule 11 sanction to punish plaintiffs for allegedly filing a frivolous claim and, if so, is the district court in contempt of the Fifth Circuit's mandate to reinstate IDL as a party?
 
 
 31
 (e) If this court should reverse the district court, is there sufficient evidence in the record to justify reassignment of this case to another judge?
 
 
 32
 (f) Should this court grant Rockwood's Motion for Sanctions?
 
 A & B
 
 33
 * Since this case is an appeal from a grant of summary judgment, this court reviews the record de novo. See International Shortstop, Inc. v. Rally's, 939 F.2d 1257, 1263 (5th Cir.1991). Our inquiry as to whether the district court properly granted summary judgment in defendants' favor is guided by Rule 56 of the Federal Rules of Civil Procedure and three Supreme Court cases. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2505-14, 91 L.Ed.2d 202 (1986); Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
 
 
 34
 Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact. See Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. Such a showing entitles the movant to summary judgment as a matter of law. See Fed.R.Civ.P. 56(c). The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. See generally id. Once the movant produces such evidence, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial--that is, the nonmovant must come forward with evidence establishing each of the challenged elements of its case for which the nonmovant will bear the burden of proof at trial. See Catrett, 477 U.S. at 322, 106 S.Ct. at 2552.
 
 
 35
 The nonmovant can satisfy its burden by tendering depositions, affidavits, and other competent evidence to buttress its claim. See Rally's, 939 F.2d at 1263; see also Fed.R.Civ.P. 56(e). Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment. See Galindo v. Precision American Corp., 754 F.2d 1212, 1216 (5th Cir.1985); United States v. An Article of Drug, 725 F.2d 976, 984-85 (5th Cir.1984). Nor may non-movants rest upon mere allegations made in their pleadings without setting forth specific facts establishing a genuine issue worthy of trial. See Anderson, 477 U.S. at 248-49, 106 S.Ct. at 2510; C.F. Dahlberg & Co., Inc. v. Chevron U.S.A., Inc., 836 F.2d 915, 920 (5th Cir.1988). In reviewing a grant of summary judgment to determine whether the law was applied correctly, this court only considers papers that were before the trial court.[10] See Nissho-IWAI American Corp. v. Kline, 845 F.2d 1300, 1307 (5th Cir.1988). Moreover, this court cannot decide disputed issues of material fact. Id.[11] Summary judgment is appropriate, therefore, if the nonmovant fails to set forth specific facts, by affidavits or otherwise, to show there is a genuine issue for trial. See Marsh v. Austin-Fort Worth Coca-Cola Bottling Co., 744 F.2d 1077, 1079 (5th Cir.1984).[12]
 
 2
 
 36
 The district court's opinion, organized first claim-by-claim and then defendant-by-defendant, establishes the basis upon which the court dealt with each of the claims raised by plaintiffs.[13] See Record Excerpts at tab 2 (Memoranda and Order at 9-30) ["Order"]. The appropriate way to challenge these findings would have been for plaintiffs to explicitly respond to them, point-by-point, with specific facts and evidentiary challenges pulled from the record. See supra note 10; see generally supra Part II.A-B.1. That, unfortunately, is not what the plaintiffs have chosen/been able to do. Rather, plaintiffs have stepped back from the district court's opinion and responded with general challenges to the court's very specific findings.[14] To fully resolve each of these contentions, we consider them individually.
 
 
 37
 (a)
 
 
 38
 Did the district court err in finding that disclaimers in
 
 
 39
 offering memoranda shielded defendants from
 
 
 40
 accusations of misrepresentation?
 
 
 41
 Plaintiffs have briefed a lengthy list of misrepresentations allegedly made by defendants. The gist of plaintiffs' overall argument is that: (i) they were induced to purchase interests in Onshore with promises of low risk and high profits, and that, (ii) even though plaintiffs were given a rescission opportunity when the financing deadline established in the first memorandum expired, that opportunity was not an honest one and defendants are, therefore, liable for their misrepresentations.
 
 
 42
 As noted by the district court, despite their differences, both memoranda warned plaintiffs of the Onshore risk.[15] Moreover, the differences between these two memoranda are harmonized by Onshore's rescission offer--plaintiffs' opportunity to, in essence, enforce the terms of the first memorandum by walking away from the Onshore deal. Although plaintiffs assault the legitimacy of that opportunity,[16] they have produced no tangible evidence to suggest anything less than "fair play" on the part of defendants. Such was the observation of the district court[17] and, having reviewed the summary judgment record thoroughly, we agree with and affirm the district court's findings.
 
 
 43
 (b)
 
 
 44
 Did plaintiffs know, or should plaintiffs have known, about
 
 
 45
 defendants' alleged misrepresentations by May 1, 1985?
 
 
 46
 The controlling date for purposes of the running of the respective statutes of limitations is when a purchaser of securities knew--or in the exercise of reasonable diligence, should have known--of the alleged wrongdoing. See Corwin v. Marney, Orton Invs., 843 F.2d 194, 197 (5th Cir.), cert. denied, 488 U.S. 924, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988), citing Breen v. Centex Corp., 695 F.2d 907, 911 (5th Cir.1983). Plaintiffs challenge the district court's finding that they knew or should have known of defendants' alleged wrongdoing by May 1, 1985. They argue that "[d]efendants intentionally and fraudulently omitted and concealed all relevant facts from Plaintiffs."[18] Plaintiffs also argue that they have met their evidentiary burden for surviving defendants' motions for summary judgment.[19]
 
 
 47
 General allegations of concealment inserted in plaintiffs' complaint or pretrial order are simply not enough to either toll a statute of limitations or survive a motion for summary judgment. We find that the district court rightfully demanded more. See generally supra Part II; see also Irving Trust Co. v. United States, 221 F.2d 303, 305 (2d Cir), cert. denied, 350 U.S. 828, 76 S.Ct. 59, 100 L.Ed. 740 (1955) (despite pretrial order specifying a number of issues being contested, judge may grant motion for summary judgment upon showing that there is no genuine issue to be tried).[20]
 
 
 48
 (c)
 
 
 49
 Is there a genuine issue of material fact as to when the
 
 
 50
 limitations period on plaintiffs' causes of action
 
 
 51
 under sections 12(1) and 12(2) of the
 
 
 52
 1933 Securities Act began to run?
 
 
 53
 Plaintiffs argue that there is a genuine issue of material fact as to when the limitations period on their causes of action under sections 12(1) and 12(2) of the Securities Act of 1933 began.[21] In short, plaintiffs argue that defendants assured them that Onshore would be a sound and lucrative venture. Defendants contend, however, that the district court correctly concluded that investors were not diligent in bringing their claims under the Securities Act of 1933. More precisely, defendants stress that plaintiffs did not furnish any evidence or cite any authorities to rebut the evidence and authorities offered by defendants regarding the one-year statute of limitations on plaintiffs' claims under § 12(2) of the Securities Act of 1933. Codified at 15 U.S.C. § 77l(2) (1989).
 
 
 54
 Each plaintiff signed a subscription agreement when she purchased Onshore interests--a subscription agreement that should have put these investors on notice of the speculative nature of their investment. It certainly triggered a reason to exercise reasonable diligence.[22] If plaintiffs subsequently were told something contrary to this agreement, that should have dyed the flag raised by the subscription agreement an even brighter shade of red.
 
 
 55
 Section 13 of the Securities Act of 1933 provides:
 
 
 56
 No action shall be maintained to enforce any liability created under section 77k or 77l (2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l (1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under ... section 77l (1) ... more than three years after the sale.
 
 
 57
 Codified at 15 U.S.C. § 77m (1989) (emphasis added). Plaintiffs filed this lawsuit on December 3, 1987. All of the plaintiffs, with the exceptions of Steubling, LaCelle, Mikles and MJM, purchased their Onshore units before November 30, 1984 by executing the subscription agreements. Therefore, under the discovery rule of section 77m of Title 15,[23] the latest date that any of these plaintiffs could have filed suit in order to toll the one-year limitation period would have been December 1, 1985. Even if we were to disregard the discovery rule of section 77m, the latest date that these plaintiffs could have filed suit to toll the three-year limitation period would have been December 1, 1987. In short, plaintiffs' claims are barred by both of the limitation periods in section 77m of Title 15. Steubling, LaCelle, Mikles, and MJM purchased their Onshore units and executed the subscription agreement by May 1, 1985. Accordingly, their claims are barred by the one-year limitation prescribed by section 77m of Title 15.
 
 
 58
 (d)
 
 
 59
 Were plaintiffs' 10(b) and 10(b)(5) claims properly time-barred?
 
 
 60
 Plaintiffs have tucked a related "catch-all" contention within the pages of their brief--namely that they have suffered financial injuries as a result of various predicate acts, including violations of section 10(b) and federal mail and wire fraud statutes. Plaintiffs elaborated upon this contention in their Supplemental Brief. See Supplemental Brief on the Impact of the Supreme Court's Recent Decision in Lampf, Pleva, Lipkind, Prupis & Petigrow vs. Gilbertson (filed Sept. 3, 1991) ["Supplemental Brief"].
 
 
 61
 In Lampf, the United States Supreme Court, in a majority opinion authored by Justice Blackmun, held that: (i) the statute of limitations applicable to actions under section 10(b) consists of the one-and-three-year provisions of the Securities Exchange Act and Securities Act for causes of action which they specifically provided for; and that (ii) equitable tolling is not applicable. See Lampf v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773, 2781-82, 115 L.Ed.2d 321 (1991). Plaintiffs, with Lampf in hand, argue that it is beyond dispute that all plaintiffs filed this lawsuit within the three-year cut-off of Section 9(e). They then go on to argue the dissenting position of Justices Kennedy and O'Connor--"that a 3-year absolute time bar is inconsistent with the practical realities of § 10(b) litigation[,]" given the difficulties in discovering whether a violation of the securities laws occurred at all. Lampf, 111 S.Ct. at 2790.
 
 
 62
 In dealing with plaintiffs' section 12 claims, the district court applied the one- and three-year limitations periods prescribed for those actions.[24] The same reasoning and the same undisputed evidence establishes that plaintiffs' 10b-5 claims are barred by the one- and three-year statute recognized in Lampf. Moreover, without the benefit of Lampf, the district judge applied a two-year statute to plaintiffs' Rule 10b-5 claims.[25] If plaintiffs' claims were barred by a two-year statute of limitations, they are necessarily barred by the one-year statute of limitations recognized in Lampf. Accordingly, we affirm the district court's finding that plaintiffs' section 10(b) and Rule 10(b)(5) claims are time-barred.[26](e)
 
 
 63
 Were plaintiffs' RICO claims properly barred?
 
 
 64
 The district court granted defendants' motions for summary judgment on plaintiffs' RICO claims, finding that:
 
 
 65
 [Plaintiffs] responded late and did not respond at all to the portion of the motion dealing with the RICO claims. The evidence already of record, presented by other Defendants, or by Ehrman with the motion, shows no evidence of illegality or factual dispute. The Court finds that Plaintiffs have failed to state a claim under RICO against the Ehrman Defendants.[27]
 
 
 66
 Our review of the record supports these findings, and plaintiffs have added nothing new in their presentation to this court.[28] We therefore find that plaintiffs' RICO claims were properly barred.
 
 
 67
 (f)
 
 
 68
 Did the district court err by assuming defendants had no
 
 
 69
 responsibility with respect to their authorization
 
 
 70
 of secondary offers and the sale of
 
 
 71
 restricted onshore units?
 
 
 72
 According to plaintiffs, the record shows that defendants sold securities to people whom defendants knew could not afford them--people, some of whom were on the verge of bankruptcy, who indicated that they did not have the money to purchase the securities, along with other "unsuitable and unsophisticated" investors. Plaintiffs also assert that, in their Proposed Pretrial Order, they offered the district court a list of twenty-four witnesses capable of testifying to these matters.[29]
 
 
 73
 This is all the plaintiffs have to offer--no specific allegations, not even so much as general allegations balanced upon the tip of a factual kernel, to connect the activity of any defendant(s) to what plaintiffs allege. See generally supra Part II; see also Fed.R.Civ.P. 56(e) (Nonmovant "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986) (movant has burden of showing that no genuine issue of fact exists, but non-moving party is not thereby relieved of producing evidence that would support jury verdict). Which of the defendants made such offerings, and to whom? Which investors indicated they did not have the money to purchase, and what exactly did they say? Plaintiffs' allegations are better suited for a complaint. After some eighteen months of discovery, tens of thousands of pages of deposition and transcripts, thousands of pages of documents and extensive interrogatories and admissions, there should be more. The burden to discover a genuine issue of fact is not on this court.[30] Accordingly, we find that summary judgment is appropriate.
 
 
 74
 (g)
 
 
 75
 Should summary judgment granting defendants' counterclaims
 
 
 76
 be reversed?
 
 
 77
 The Ehrman defendants moved for summary judgment on their counterclaims against several plaintiffs regarding unpaid promissory notes and cash calls used by these defendants to purchase Onshore interests. The evidence shows that the named plaintiffs signed the notes and have not paid them, and plaintiffs have made no showing to the contrary.[31] The district court's grant of summary judgment on this issue is supported by our recent holding in Colony Creek, Ltd. v. Resolution Trust Corp.:
 
 
 78
 We have said before that because of the relative simplicity of the issues involved, suits to enforce promissory notes "are among the most suitable classes of cases for summary judgment." Lloyd v. Lawrence, 472 F.2d 313, 316 (5th Cir.1973). This statement holds true today. Appellee's motion and supporting materials established the elements necessary for recovery: the RTC holds a valid claim against Colony Creek and Goldberg, the note has matured according to its terms, and Colony Creek and Goldberg have defaulted.
 
 
 79
 941 F.2d 1323, 1325 (5th Cir.1991) (citations omitted).[32] Accordingly, we affirm the district court's grant of summary judgment on defendants' counterclaims.
 
 
 80
 (h)
 
 
 81
 Plaintiffs' other summary judgment contentions
 
 
 82
 We have sifted through plaintiffs' briefs and found numerous points tucked within their pages. Our efforts have separated out a few more contentions worthy of discussion.
 
 
 83
 (1)
 
 
 84
 The issues identified in defendants' Pretrial Order
 
 
 85
 Throughout their brief and during oral argument, plaintiffs have argued that the defendants' Pretrial Order, filed after their Motions for Summary Judgment, identified twenty-eight contested issues of material fact, and that plaintiffs' own Proposed Pretrial Order lists at least twenty-four witnesses prepared to testify about defendants' fraudulent inducements and assorted Onshore wrongdoings. Plaintiffs argue that these issues are sufficient to defeat defendants' motions for summary judgment.
 
 
 86
 Defendants assert that this contention lacks merit for two reasons: (i) a pretrial order is not competent summary judgment proof and (ii) plaintiffs' list of contested issues do not create "issues of material fact" as that term is used for the purposes of summary judgment. We agree. First, plaintiffs' "list of unfiled fact issues for the proposed pretrial order does not constitute summary judgment evidence, but is merely in the nature of pleadings, which cannot be used to create an issue of fact." Geiserman v. MacDonald, 893 F.2d 787, 793 (5th Cir.1990) (citation omitted); accord Irving Trust Company v. United States, 221 F.2d 303, 305 (2d Cir.), cert. denied, 350 U.S. 828, 76 S.Ct. 59, 100 L.Ed. 740 (1955). Rule 56(e) of the Federal Rules of Civil Procedure requires a nonmovant to go beyond pleadings to establish the presence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Second, the Supreme Court has discussed "materiality" and where, as here, the summary judgment evidence establishes that one of the essential elements of the plaintiffs' cause of action does not exist as a matter of law, or that plaintiffs' cause of action is barred by a statute of limitations, all other contested issues of fact are rendered immaterial. See Celotex, 477 U.S. at 323, 106 S.Ct. at 2552 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").[33]
 
 
 87
 (2)
 
 
 88
 The deposition testimony of defendant Joel Middlebrook
 
 
 89
 According to plaintiffs, the district court ignored important deposition testimony of defendant Joel Middlebrook,
 
 
 90
 which candidly revealed that Defendants Houston Petroleum Company (H.P.C.) and John N. Ehrman (Ehrman) put on "dog-and-pony shows" to entice prospective investors to purchase limited partnership securities (units) and engaged in prohibited general solicitations of potential investors in violation of SEC Rule 502(c) of Regulation D, 17 C.F.R. § 230.502(c), promulgated under the 1933 Securities Act.[34]
 
 
 91
 We disagree. After eighteen months of discovery, the only "evidence" plaintiffs produced in response to defendants' motions for summary judgment was an unsigned letter and a one-page excerpt from Ms. Joel Middlebrook's deposition, the bookkeeper for the Houston Petroleum Company.[35] Ms. Middlebrook did not purchase any Onshore shares, nor is she a plaintiff in this lawsuit. While the deposition excerpt and letter do illustrate Ms. Middlebrook's dissatisfaction with HPC, neither of these provides reliable evidence that HPC or O'Donnell have, or may have, violated the Securities Act or RICO. Such insignificantly probative facts are insufficient to satisfy plaintiffs' summary judgment burden. See Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2511.
 
 C
 
 92
 Plaintiffs also assert that the district court erred in denying their Motion to File a Second Amended Complaint, which, according to plaintiffs, detailed the history and pattern of defendants' unlawful activities and alleged that a subsequent non-registered offering--Texas Energy Ltd.--by Ehrman and others was a continuation of defendants' investment scheme. District courts generally are afforded great discretion regarding trial procedure applications (including control of the docket and parties), and their decisions are reviewed only for abuse of discretion. See Pierce v. Underwood, 487 U.S. 552, 108 S.Ct. 2541, 2546-47 & n. 1, 101 L.Ed.2d 490 (1988). Rule 15(a) of the Federal Rules of Civil Procedure provides that:
 
 
 93
 A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by the written consent of the adverse party; and leave shall be freely given when justice so requires.
 
 
 94
 Fed.R.Civ.P. 15 (emphasis added). Applying Rule 15, this court has stated that whether to allow an amendment is a decision to be made by the district court. See Ross v. Houston Indep. Sch. Dis., 699 F.2d 218, 228 (5th Cir.1983). Precisely,
 
 
 95
 [o]nce a responsive pleading has been filed, a pleading may be amended only by leave of court or by consent of the adverse party. Fed.R.Civ.P. 15(a). While "leave shall be freely given when justice so requires," the decision rests in the sound discretion of the trial court.... Our review extends only to whether the trial court abused that discretion.
 
 Id. at 228 (citations omitted).[36]
 
 96
 This case's convoluted procedural history suggests that it is litigation with Bleak House potential. One chapter within that history is the opportunity plaintiffs were given to amend their complaint on December 18, 1987. Another is the opportunity plaintiffs were given, following the court's granting of an extension of time, to join new parties until August 9, 1988. Rather than taking advantage of these opportunities, plaintiffs waited until they had expired and then moved for another extension of time to join new parties--a motion the district court denied. Now plaintiffs appeal the district court's denial of their September 9, 1988 Motion for Leave to File a Second Amended Complaint or in the Alternative Motion for Joinder of Persons Needed for Just Adjudication. We will not oblige and, accordingly, we affirm the district court's denial of that motion.
 
 D
 
 97
 Plaintiffs also allege that the district court dismissed IDL as a party solely as a Rule 11 sanction to punish them for filing an allegedly frivolous claim. More specifically, plaintiffs assert that the district court's dismissal of IDL is (i) a mistake of law and (ii) in contempt of this court's mandate to reinstate IDL as a defendant.
 
 
 98
 * Plaintiffs contend that this court, in deciding plaintiffs' previous appeal, implicitly recognized that the case now before us is not frivolous.[37] They are wrong. The appeal plaintiffs previously brought before us was from the district court's order dismissing IDL for lack of personal jurisdiction. The panel opinion did not consider, examine, or rule on the merits of the overall case. Accordingly, we do not find that our previous opinion is persuasive authority in opposition to defendants' motions for summary judgment.
 
 2
 
 99
 Plaintiffs also assert that the district court's dismissal of IDL as a party is in contempt of this court's mandate to reinstate IDL as a defendant. We disagree. The only debatable issue is whether IDL should be reinstated as a defendant to plaintiff Topalian's claims--an issue incidental to our consideration of the merits of plaintiffs' overall action.[38] Finding that plaintiffs have not even proximately approached meeting their summary judgment burden,[39] we find that the district court properly granted summary judgment against them.
 
 E
 
 100
 Another issue raised by plaintiffs is whether, should this court decide to reverse the district court's summary judgment against plaintiffs, there is sufficient evidence in the record to justify reassignment of this case to another district court judge. We find no grounds for reversal and, therefore, we do not reach this issue.
 
 F
 
 101
 The final matter before us is whether we should grant defendant Rockwood's request for sanctions pursuant to Rule 38 of the Federal Rules of Appellate Procedure. Under Rule 38, this court may impose sanctions upon parties who pursue frivolous appeals. See Coghlan v. Starkey, 852 F.2d 806, 810-11 (5th Cir.1988). A frivolous appeal is one "that relies on legal points that are not arguable on the merits." Lyons v. Sheetz, 834 F.2d 493, 496 (5th Cir.1987) (citation omitted); see also McAfee v. Fifth Circuit Judges, 884 F.2d 221, 223 (5th Cir.1989), cert. denied, 493 U.S. 1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (1990). We find that, although plaintiffs have not met the evidentiary burden required to survive defendants' motions for summary judgment, we cannot summarily dismiss the issues they have brought before us as "frivolous." Accordingly, we deny defendant Rockwood's request for sanctions.
 
 III
 
 102
 For the foregoing reasons, we AFFIRM.
 
 APPENDIX
 
 103
 I. Claims Against All Defendants:
 A. Section 17(a) Evidence presented shows that plaintiffs signed
 Claims: documents necessary to subscribe to units, and that
 documents warn investors of "high degree" of risk;
 each investor was sent "offer of rescission";
 plaintiffs' claims under section 12(2) of the 1933
 Act are time-barred; the section 12(1) claims are
 clearly time-barred by the one-year statute of
 limitations.
 B. 10b"5 Claims: Since the tolling period for plaintiffs' claims
 commenced by May 1, 1985 at the latest, and the
 appropriate limitations period for section 10b"5
 claims in Texas was two years, plaintiffs' claims
 are time barred.
 C. " § 55t" District court found that no such statute exists.
 Claims:
 D. RICO Claims: Since Robert B. Eckis, Jr., was not listed as a
 defendant in response to Question 2 of the district
 court's RICO standing order, the RICO claims against
 him were dismissed.
II. Defendants' Motions:
 A. John Ehrman "The summary judgment evidence shows that the efforts
 and EIG: expended by the Defendants were all legitimate
 business practice.... [T]he evidence already of
 record, presented by other Defendants, or by Ehrman
 with the motion, shows no evidence of illegality or
 factual dispute." Order at 15.
 B. Roderick "Plaintiffs have admitted that they know of no
 Johnson: wrongdoing by Johnson, Johnson did not sell them
 securities. In fact, Johnson had nothing to do with
 their decision to purchase these securities. The
 Court has made an exhaustive review of all the
 evidence. This has revealed that Plaintiffs did not
 read either offering memorandum in any depth and had
 no knowledge of Johnson's role in the partnership."
 Order at 17.
 C. Rio Bravo & "The evidence shows that Rio Bravo and Mr. Gamble had
 Bert Gamble: no contact with Onshore other than the two
 agreements.... The Court has reviewed the documents
 presented by Rio Bravo. There is no evidence of
 wrongdoing." Order at 19"21.
 D. HPC & Richard "Defendants' evidence shows that none of the
 O'Donnell: Plaintiffs believed HPC did anything with Onshore
 investors, let alone anything wrong. Plaintiffs'
 response again is only full of contentions that at
 trial they will prove their claims." Order at 22.
 E. Rockwood: (1) "Nowhere in the Complaint or the RICO response is
 it alleged that Rockwood made any affirmative
 misrepresentations or engaged in any predicate RICO
 acts.... Based upon the evidence presented, Rockwood
 contends that there is no evidence to show that
 Rockwood engaged in any RICO acts, made any
 misrepresentations to Plaintiffs[,] or was involved
 in any way with the sale of the units of Onshore."
 Order at 23.
 (2) "The promissory notes signed by the Plaintiffs
 were assigned to Rockwood.... Rockwood is entitled
 to judgment as a matter of law on this contractual
 claim regardless of any ruling on Rockwood's motion
 for summary judgment on the claims against it,
 because the claims against Rockwood do not arise out
 of the Indemnification Agreement.... Therefore,
 Rockwood is entitled to judgment as a matter of law
 on the separate and independent ground of recovery
 based on the promissory notes." Order at 24"25.
 F. Robert E. "In short, the Plaintiffs have asserted no knowledge
 Eckis, Jr.: of Mr. Eckis' involvement in any aspect of Onshore,
 and Mr. Lopez's response presents no factual dispute
 which could preclude summary judgment for this
 defendant." Order at 29.
 G. Joel A. "Mr. Lopez has not responded to this motion although
 Middlebrook: it has been on file for almost two months. Since the
 motion is unopposed, and the Court has not found any
 facts to show Middlebrook's liability, Middlebrook's
 motion shall be granted on the merits as to all
 claims." Order at 29.
 
 
 
 [1]
 This action has spawned two sets of related counterclaims, and the case before this court is actually a consolidation of three related actions. See infra note 9
 
 
 [2]
 Not all defendants are alleged to have violated all of these laws
 
 
 [3]
 Offerings made to credited investors and pursuant to Regulation D are exempt from the registration requirements of section 5 of the Securities Act of 1933. See 15 U.S.C. § 77e (1988). It is undisputed that the Onshore offering was not registered with the SEC under section 5
 
 
 [4]
 Investors were given the option of subscribing to an Onshore unit by either paying cash or by executing a promissory note for the full amount of their subscriptions. A total of 77 investors bought the units, including fourteen of the fifteen plaintiffs
 
 
 [5]
 The offering termination date was actually October 31, 1984 "unless the subscription is extended for up to two additional one-month periods...." Appellants' Record Excerpts at tab 13, Topalian v. Ehrman, Nos. 90-2104, 90-2105, 90-2106 (5th Cir. filed Oct. 24, 1990) (Onshore Exploration Ltd. 1984 Mid-Year Drilling Program) ["Appellants' Record Excerpts" ]
 
 
 [6]
 Six of the plaintiffs defaulted on promissory notes executed to finance their subscriptions. EIG (guarantor on payment of the loan made to Onshore by IDL) has been sued by Rockwood Insurance Company ("Rockwood")--a firm that issued investor bonds insuring the payment of the promissory notes used to finance Onshore--as a result of the default of several investors, including these six plaintiffs. EIG and Onshore filed counterclaims seeking payment of the amount due on these notes by these plaintiffs. Also, defendant Rockwood filed a counterclaim against seven of the plaintiffs seeking a money judgment on promissory notes and indemnification agreements, and EIG and Onshore have filed another counterclaim against plaintiff Warren Fienga ("Fienga"), who defaulted on a cash call when he stopped payment of his $8,000.00 check to Onshore
 
 
 [7]
 The district court struck plaintiffs' Second Amended Complaint, which was some 185 pages and 630 paragraphs long, because plaintiffs failed to obtain leave of court, as required by Rule 15(a) of the Federal Rules of Civil Procedure
 
 
 [8]
 Ultimately, they seek much more--rescission of the transactions which resulted in the purchase of the units, treble damages under RICO, imposition of a constructive trust, appointment of a receiver, costs and attorney's fees, and "other relief as may be just and proper."
 
 
 [9]
 The case is actually a conglomeration of three cases on appeal, Topalian v. Ehrman & Rockwood Ins. Co., No. 90-2104 (5th Cir.); Topalian v. Ehrman & Ehrman Investment Group, No. 90-2105 (5th Cir.); Topalian v. Ehrman, No. 90-2106 (5th Cir.). The record consists of some 323 docket entries
 
 
 [10]
 This court's inquiry is limited to the summary judgment record before the trial court: the parties cannot add exhibits, depositions, or affidavits to support their positions on appeal, nor may the parties advance new theories or raise new issues to secure reversal. See Munoz v. International Alliance of Theatrical Stage Employees, 563 F.2d 205, 209 (5th Cir.1977); see generally CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2716 at 651-54 (Civil 2d. vol. 10 1983). Facts not presented at trial cannot be asserted on appeal. Garcia v. American Marine Corp., 432 F.2d 6, 8 (5th Cir.1970) ("Any action on appeal can be properly based only on matters considered at trial: ... [a] court may not therefore, reverse [summary judgment] on the basis of facts not in the record")
 
 
 [11]
 For more cases discussing how summary judgment should be reviewed on appeal, see Herrera v. Millsap, 862 F.2d 1157, 1159-60 (5th Cir.1989); Reid v. State Farm Mut. Ins. Co., 784 F.2d 577, 578 (5th Cir.1986)
 
 
 [12]
 A grant of summary judgment is not precluded by a dispute as to immaterial fact. See Houston North Hospital Properties v. Telco, 688 F.2d 408, 410 (5th Cir.1982) (citations omitted)
 
 
 [13]
 A summary of the court's findings and rulings is attached as an Appendix
 
 
 [14]
 Plaintiffs argue that the district court committed reversible error by:
 (a) failing to note twenty-eight (28) contested issues of material fact listed in Defendants' Joint Pretrial Order Filed after Defendants had made their summary judgment motions; (b) totally failing to discuss how the moving party Defendants had satisfied their burden of production or the legal standard for making that determination; (c) assuming that the moving party Defendants had satisfied their burden of production of the legal standard for making that determination; (d) and overlooking deposition testimony and other documents presented by the non-moving Plaintiffs, including Plaintiffs' Pretrial Order, which identified twenty-four (24) witnesses prepared to testify as to each issue based on their personal dealings with Defendants.
 Appellants' Brief at vi, Topalian v. Ehrman, Nos. 90-2104, 90-2105, 90-2106 (5th Cir. filed Oct. 24, 1990) ["Appellants' Brief"].
 
 
 [15]
 Specifically, the district court noted that: [b]oth documents warn the investor of the "high degree of risk" and both state, '... and, accordingly, there is no assurance that any distributions will ... be made to the limited partners.' ... Further, along with the second memorandum, each investor was sent an 'offer of [rescission].' ... The Plaintiffs do not deny signing any of the documents. What they do deny is that they read any of the documents either before or after signing them
 Order at 11-12; id. at 14 ("The offering memorandum clearly states that the investors might never see a penny of their investment and might never make a profit. The promissory notes clearly state that the signer is responsible for the debt. It is well settled law that an adult is responsible for reading the documents he signs.").
 
 
 [16]
 According to plaintiffs,
 [t]he unlawful rescission offer was made after December 31, 1984, it was not made to all subscribers, did not require an affirmative reconfirmation and was not accompanied by a disclosure including all information necessary to update previously provided disclosures. Furthermore, Defendants did not give any disclosure materials to Plaintiffs until well after the Partnership had secured financing.
 Appellants' Brief at 26-27. And appellants add, "Defendants were able to resell the units to Plaintiffs while Plaintiffs were still under the influence of Defendants' continuing fraudulent misrepresentations and high-pressure selling tactics." Id. at 26.
 
 
 [17]
 See Order at 27:
 Nothing appears to have been kept secret from the Plaintiffs. In fact, in their depositions, they admit their ignorance of any wrongdoing. They all state that they did not read any of the documents they received in connection with Onshore, including the ones they signed, or that they scanned them, did not understand them but sought no explanation.
 
 
 [18]
 Appellants' Brief at 44. In fact, plaintiffs go so far as to contend that "[t]he question of whether a party had sufficient opportunity so that in the exercise of reasonable diligence he would have discovered the facts forming the basis of his cause, invariably raised questions of fact." Appellants' Brief at 43
 
 
 [19]
 Appellants' Brief at 42:
 The Court's finding is not only preposterous but in conflict with: (a) portions of its own Opinion which repeatedly states that Plaintiffs lacked knowledge of any wrongdoing by certain Defendants at the time of the alleged wrongs; (b) Defendants' Pretrial Order which states that the date when each Plaintiff should have known of the alleged wrongs as to each Defendant was a contested issue of fact; (c) Plaintiffs' Complaint and other documents which consistently state that Defendants fraudulently concealed their wrongdoing and prevented Plaintiffs from suspecting any wrongdoing until May, 1987; (d) the uncontested fact that selling activities were still continuing and all Plaintiffs were just receiving the "Other" Memorandum on May 1, 1985, the date used by the Court; and (e) the fact that Defendants continuously authorized secondary sales of restricted securities for an indefinite period.
 
 
 [20]
 The Irving court also noted the function of summary judgment--to make determinations without the expense and delay of trial where there are no real issues--and found that statements in pretrial order do not preclude entry of summary judgment. Id
 
 
 [21]
 Section 12(1) creates civil liability where mail and other instrumentalities of interstate commerce are used in the sale, delivery, or offer of sale of an unregistered security; section 12(2) imposes liability on any person who offers or sells a security "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading...." 15 U.S.C. § 77l(2) (1988)
 
 
 [22]
 See supra Part II.A-B.2.b
 
 
 [23]
 This section reads:
 No action shall be maintained to enforce any liability created under section 77k or 77l(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77l(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(2) of this title more than three years after the sale.
 15 U.S.C. § 77m (1989).
 
 
 [24]
 See supra Part II.A-B.2.c
 
 
 [25]
 See Order at 13
 
 
 [26]
 On the eve of releasing this opinion, we learned that the Securities Exchange Act of 1934 § 27A, 15 U.S.C. § 78(aa), S. 543, P.L. 102-242, December 19, 1991 (emphasis added), was amended to provide as follows:
 (a) EFFECT ON PENDING CAUSES OF ACTION--The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.
 (b) EFFECT ON DISMISSED CAUSES OF ACTION--Any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991--
 (1) which was dismissed as time barred subsequent to June 19, 1991, and
 (2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.
 shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section.
 In the present case, the claims brought under the 1934 Securities and Exchange Act were dismissed by the district court in 1990--that is, prior to Lampf, --- U.S. at ----, 111 S.Ct. at 2773, and prior to this amendment's June 19, 1991 trigger date. Accordingly, we find that the amendment does not resurrect the plaintiffs' claims.
 
 
 [27]
 Order at 15. Specifically, the court stated that:
 The summary judgment evidence shows that the efforts expended by the Defendants were all legitimate business practice. Ehrman and the other Defendants entered into agreements for the partnership to participate in drilling programs. Financing was arranged. Units were offered and sold to the Plaintiffs and other investors. Wells were drilled, some produced oil or gas and the Partnership was paid its share of money due. The Offering Memorandum and other documents state how the money would be paid out of funds received. This is normal business practice. There is no evidence of illegality.
 Id.
 
 
 [28]
 Plaintiffs' entire RICO argument is as follows:
 However, throughout the text of their Complaint as well as in the RICO statement, Plaintiffs clearly detailed that they were fraudulently induced to make sizeable investments of money in an "Enterprise" which was conceived, developed and operated for the unjust enrichment of the Defendants. The "Enterprise" referred to is clearly the limited partnership--ONSHORE. It was plain to see that they were not referring to the Defendants as the "Enterprise."
 Plaintiffs do contend, however, that all the Defendants conducted or participated, directly or indirectly, in the business affairs of the limited partnership--the Enterprise--through a pattern of racketeering activity in violation of 18 U.S.C. § 1962. All of the Defendants were an integral part of the scheme to deprive Plaintiffs of their investment in ONSHORE. They each participated in the scheme to unjustly enrich themselves to the loss and detriment of the Plaintiffs.
 Appellants' Brief at 48 (emphasis added).
 
 
 [29]
 More specifically, plaintiffs allege that:
 The Defendant General Partners and their seller-agents consciously ignored the Partnership's "Suitability Standards" by offering units to prospective investors who did not qualify, some of whom indicated that they did not have the money to purchase a unit. However, the guarantees of no loss, the expectancy of a return of three or four times the initial investment, the "no cash down basis" and the assurances that limited partners could sell back their shares for double what they paid were irresistible lures to Plaintiffs and others.
 Appellants' Brief at 24.
 
 
 [30]
 See Nissho-Iwai American Corporation v. Kline, 845 F.2d 1300, 1307 (5th Cir.1988) (court not required to search entire record to ensure that record is "bereft of genuine issue of material fact.")
 
 
 [31]
 The evidence we allude to includes deposition testimony, copies of signed notes, and unanswered interrogatories and requests for admissions from defendants to plaintiffs. In the words of the district court:
 Mr. Lopez is obviously not aware of the law in regard to responding to a motion for summary judgment. If factual issues abound, this was the time to present them, with supporting documentation, to this court. Mr. Lopez has failed to present more than unsubstantiated allegations....
 Order at 15.
 
 
 [32]
 See also Hemphill v. Greater Houston Bank, 537 S.W.2d 124, 125 (Tex.Civ.App.--Houston, [14th Dist.] 1976, no writ) (holding that summary judgment is appropriate if summary judgment proof establishes that moving parties are holders of the notes, the notes have matured according to their terms, and nonmoving parties have defaulted)
 
 
 [33]
 Similarly, in Anderson v. Liberty Lobby, Inc., the Supreme Court stated that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986) (citation omitted)
 
 
 [34]
 Appellants' Brief at 2. The testimony in question has been reproduced in Record Excerpts at 466 (Filed Jan. 8, 1991):
 Q And what was the occasion that brought about your learning of Houston Petroleum Company?
 A Well, one time I went to their office, before they started the program, and visited with them. They had several people there that showed the office and what they were going to drill, and so on. It was a kind of a dog-and-pony show for potential investors that John had set up and did.
 
 
 [35]
 The district court properly characterized that letter as "a rambling stream of consciousness letter from one Defendant to another which proves nothing." Order at 22
 
 
 [36]
 The district court should examine several factors to determine whether to allow an amendment under Rule 15. See Earlie v. Jacobs, 745 F.2d 342, 345 (5th Cir.1984). The court should consider whether allowing the amendment would cause undue prejudice to the nonmovants, undue delay in the proceedings and whether the movants are acting in bad faith. Id. (citations omitted)
 
 
 [37]
 See Topalian v. Ehrman, 899 F.2d 12 (5th Cir.1990) (unpublished)
 
 
 [38]
 On March 13, 1990, this court dismissed the IDL appeal as to all plaintiffs except plaintiff Topalian--the only party properly specified in the notice of appeal. The case was remanded to the district court for reconsideration of Topalian's claims against IDL. See Topalian v. Ehrman, 899 F.2d 12 (5th Cir.1990) (unpublished). On August 6, 1990, the district court entered an order dismissing Topalian's claims against IDL as a sanction and imposed monetary sanctions against plaintiffs' counsel, Armando Lopez, and against three of the plaintiffs. On November 30, 1990, plaintiffs' counsel filed a notice of appeal (on his own behalf, on Topalian's behalf, on the three sanctioned plaintiffs' behalf, and on behalf of another plaintiff, Garcia-Quiroga). This notice stated that the appeal was taken from the August 10, 1990 order and an order, entered on November 7, 1990, denying a motion for reconsideration and an oral request for entry of a Rule 58 judgment. On April 3, 1991, that appeal, docketed as No. 90-2806, was dismissed for lack of a Rule 58 judgment. On June 27, 1991, the district court entered a Rule 58 judgment and, on July 18, 1991, plaintiffs' counsel filed another notice of appeal. That appeal was docketed as No. 91-2818 and is presently pending before the court
 
 
 [39]
 See supra Part II.A-B.1