Calvin SULAK, Plaintiff.

v.

ATLANTIC AMERICAN CORPORATION, INSURANCE COMPANY and Bankers Fidelity Life Insurance Company, Defendant.

Civ. A. No. 3:92–CV–2088–P.

United States District Court, N.D. Texas, Dallas Division.

Jan. 13, 1994.

Harry P. Stuth, Dallas, TX, for plaintiff.

Kenan Loomis, Atlanta, GA, for defendant Atlantic American Corp.

Sudie Thompson, McCauley Macdonald Love Devin, Dallas, TX, for defendant Bankers Fidelity Life Ins. Co.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Before the Court is Defendants' Motion for Summary Judgment filed October 29, 1993, along with Plaintiff's Response and Defendants' Reply.

This is a breach of contract case. Plaintiff is an insurance agent for Defendants Atlantic American Life Insurance Company and Bankers Fidelity Life Insurance Company. Plaintiff sold medicare supplement policies for Defendants and has brought suit to re-

cover commissions he claims are due to him from policies he sold.

Plaintiff was paid by commission, and his commissions were determined by multiplying "commissionable premiums" by a certain percentage. The percentage by which commissionable premiums were multiplied are set out in a Compensation Schedule which is part of the Agents Contract between the Defendant insurance companies and their agents.

At issue here are two paragraphs of the Agents Contract, paragraphs 14 and 21. Paragraph 14 states: "The Company shall, in its sole discretion, determine the adjustments, if any, to be made in Compensation resulting from a change in plan, amount or premium of insurance, other than by term conversion."

Paragraph 21 states: "Compensation shall be determined by the current Compensation Schedule. The Company may at any time, upon written notice, change the rates of Compensation. Such change will be effective with respect to applications received in the Home Office of the Company on and after the date fixed in the notice, except as specifically provided."

Also at issue is a December, 1987 memorandum entitled "Special Bulletin, New 1988 Rates" which Defendant mailed to their agents. In this document, Defendants informed their agents that "effective January 1, 1988, Bankers Fidelity Life Insurance Company will follow the lead of other companies and will no longer pay commissions on rate increases that become effective on or after December 31, 1987. This change is for all accident and health policies."

Based on this memorandum, Defendants stopped using premium increases after December 31, 1987, in calculating commissions for their agents. As a result of this, Plaintiff claims he was paid over $92,000.00 less in commissions than what he was owed.

In support of his claim, Plaintiff raises two primary arguments. Plaintiff first contends that Defendants did not have authority, under the Agents Contract, to stop using premium increases in the calculation of commissions for policies sold by Plaintiff prior to January 1, 1988. Plaintiff contends that De-

fendants' Special Bulletin of December, 1987, could only affect policies sold after December 31, 1987, the effective date of the change of policy announced in the December Special Bulletin.

Second, Plaintiff asserts he did not receive the December, 1987, Special Bulletin. Since Paragraph 21 of the Agents Contract specifies that company changes to compensation may only be made upon written notice, Plaintiff argues that the Special Bulletin does not apply to him since he did not receive it.

For reasons set forth below, the Court GRANTS Defendants' Motion for Summary Judgment.

Summary Judgment is proper if the pleadings, discovery materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once a proper motion for summary judgment is made, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact. To satisfy this burden, then nonmovant must set forth specific facts, and mere conclusory allegations are not sufficient to defeat a motion for summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.1992). The nonmovants may not rely on "mere allegations in their pleadings without setting forth specific facts establishing a genuine issue worthy of trial." *Id.*, at 1131.

Paragraph 22 of the Agents Contract states that "this Agreement shall be governed by the laws of the state of Georgia." A federal court sitting in a diversity suit must follow the choice of law rules of the forum state. Contractual choice of law provisions are honored by Texas Courts. *Placid Oil Co. v. Louisiana Oil Gas Intra State, Inc.*, 734 S.W.2d 1 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *Budge v. Post*, 643 F.2d 372 (5th Cir.1981). Thus, Georgia law governs the construction of this contract.

Plaintiff bases his first argument on the sentence in Paragraph 21 of the Agents Contract which states that changes in compensation "will be effective with respect to applications received in the Home Office of the

Company on and after the date fixed in the notice, except as specifically provided." Thus, the December, 1987, Special Bulletin could apply to applications for policies received by Defendants on or after December 31, 1987.

However, in making this argument, Plaintiff fails to give meaning to the last phrase of the above-quoted sentence in Paragraph 21. Plaintiff's argument would be generally true, "except as specifically provided." The December, 1987, Special Bulletin "specifically provided" that the compensation changes announced in the bulletin applied to "all accident and health policies." There is nothing in the Agents Contract that prohibits Defendants from applying compensation changes to policies issued prior to the change. The only limitations placed by the Agents Contract on Defendants in this respect is that compensation changes be made "upon written notice," and changes that apply to prior issued policies have to be "specifically provided" for in the written notice of the change.[1]

The Court finds that the December, 1987, Special Bulletin satisfied both of these conditions. The notice of the compensation change was in writing and it provided that the change applied to "all accident and health policies." This language is sufficient to inform Plaintiff and the other agents that the compensation changes announced in the Special Bulletin applied to policies issued prior to the effective date of the change.

In construing a contract, the Court should look to the terms within the four corners of the contract. *Sakas v. Jessee*, 202 Ga.App. 838, 415 S.E.2d 670 (1992); *Hartley–Selvey v. Hartley*, 261 Ga. 700, 410 S.E.2d 118 (1991). Words in a contract which are plain and obvious should be given their literal meaning. *Jefferson Pilot Life Ins. Co. v. Clark*, 202 Ga.App. 385, 414 S.E.2d 521 (1991).

Accordingly, the Court finds that the Agents Contract gave Defendants the authority to make the change it did in December, 1987, and that the change was properly made in accordance with the terms of the Agents Contract.

The second argument raised by Plaintiff is that he never received the December, 1987, Special Bulletin, and therefore, the compensation change announced in the bulletin should not apply to him.

Defendants present evidence that the Special Bulletin at issue was mailed to Plaintiff through the customary mailing routine of Defendants. When direct evidence that a letter was properly addressed, stamped, and mailed to an addressee is unavailable, "an inference of mailing may be raised by showing the customary mailing practice in connection with the sender's address." *Jimmy Swaggart Ministries v. Arlington*, 718 S.W.2d 83 (Tex.App.—Ft. Worth 1986, no writ). Defendants have shown this and, therefore, rely on the presumption that Plaintiff received the document. *Id.; Hot Shot Messenger Service, Inc. v. State of Texas*, 798 S.W.2d 413 (Tex.App.—Austin 1990).

Plaintiff, however, contends that he never received the Special Bulletin, and that his denial is sufficient to rebut the presumption and create a fact issue for the fact finder. *Gulf Ins. Co. v. Cherry*, 704 S.W.2d 459 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

However, it is apparent that mere denial by the addressee of receipt of a letter is not always sufficient, by itself, to rebut the presumption. In each of the three cases cited above, *Swaggart, Hot Shot Messenger* and *Gulf Ins.*, the addressee denied receipt of the document in issue.

In *Gulf Ins.*, the case relied on by Plaintiff, the issue was not receipt by the addressee, but whether receipt of a check was before a certain deadline. In that case, the addressee presented evidence that the check in question could not have been received before a

---

1. In his affidavit, Plaintiff states that previous changes to his compensation had always been made by an addendum or amendment to the contract. Plaintiff argues that the December, 1987, Special Bulletin did not satisfy the requirements of the contract to change his compensation.

However, it is clear the contract does not require that changes in compensation be made by addendum or amendment to the contract. The requirements of the contract are those set out above.

certain date and time, which was after the deadline. Clearly there was a fact issue in that case, and the jury resolved it in favor of the addressee.

In *Swaggart*, the presumption of receipt of mail was found not to have been rebutted even though the addressee claimed to not have received the mail in question. The court found that other persons in the office of the addressee had access to the mail, and in fact, received the mail before it was forwarded to addressee. There was no evidence that these persons had not received the mail in question.

The summary judgment evidence in this case establishes that Plaintiff's wife received and opened all mail coming into Plaintiff's office. Mrs. Sulak would then distribute the mail to Plaintiff and the other employees in the office.

Prior to the filing of the Motion for Summary Judgment, Mrs. Sulak testified at a deposition that she could not deny receipt of the Special Bulletin. In the response to Defendants' Motion for Summary Judgment, Mrs. Sulak filed an affidavit in which she stated that it was not part of her duties, nor did she customarily look at each item she delivered to Plaintiff. Mrs. Sulak further stated that the reason she did not deny receipt of the Special Bulletin in her deposition testimony was that she had "no idea of what most of the items are that I receive in the mail and deliver to Calvin Sulak. I did not see the bulletins from Atlantic American Life Insurance Company or Banker's Fidelity Life Insurance Company dated December 22, 1987, prior to June 1, 1993."

Defendants' evidence is that the bulletin was mailed to Plaintiff and the other agents twice. First, when the bulletin was generated, and second, with the agents commission checks on December 31, 1987. The Court notes that while the summary judgment evidence is that neither Plaintiff nor his wife saw the Special Bulletin at around the time of the mailings, the fact remains that neither Mrs. Sulak, who received, opened, and distributed the mail, nor the other employees have denied that the bulletin was received by Plaintiff's office.

For these reasons, the Court finds that Plaintiff has failed to rebut the presumption of receipt of the Special Bulletin.

By separate order, the Court has granted Plaintiff's Motion to file his First Amended Complaint. In the Joint Pre–Trial Order filed by the parties, Plaintiff stated he was pursuing two claims against Defendants. The first claim was for $92,000.00 on the basis discussed above. Alternatively, Plaintiff contended that if Defendants' contentions with regard to the Special Bulletin are accepted, then he seeks over $11,000.00 based on improper calculations of commissions by Defendants. Plaintiff stated at the pre-trial conference that his second contention has been before the parties and part of the case from the beginning. Plaintiff's First Amended Complaint adds this second claim. The Court has granted Plaintiff's motion to amend his complaint.

Since the Court has granted Defendants' Motion for Summary Judgment as to the $92,000.00 claim, the only issue that remains is Plaintiff's claim for $11,878.02 due to errors in the calculating of commissions by Defendants.

Plaintiff originally filed this suit in state court, and Defendants removed the suit to this Court on the basis of diversity jurisdiction. Since the sole remaining issue involves an amount in controversy of less than $50,000.00, the Court finds that the case should be remanded to the 134th District Court of Dallas County, Texas.

Accordingly, it is ordered that Defendants' Motion for Summary Judgment on the $92,200.16 claim is granted, and that this case be remanded to the 134th District Court of Dallas County, Texas, for trial on the remaining claim.

**SO ORDERED.**