William B. WALLACE, Jerry Bain, and Duane A. Guhlke, Plaintiffs,

v.

CAVENHAM FOREST INDUSTRIES, INC.; Cavenham Forest Industries Salaried Employees Involuntary Separation Salary Continuation Plan; Trustees of Cavenham Forest Industries Salaried Employees Involuntary Separation Salary Continuation Plan; Cavenham Forest Industries Retirement Plan for Salaried Employees; Trustees of Cavenham Forest Industries Retirement Plan for Salaried Employees; Crown Zellerbach Corporation; Crown Zellerbach Salaried Employees Involuntary Separation Salary Continuation Plan; Trustees of Crown Zellerbach Salaried Employees Involuntary Separation Salary Continuation Plan; Crown Zellerbach Retirement Plan; Trustees of Crown Zellerbach Retirement Plan; James River Corporation of Nevada; (And individual employees/agents as yet unknown of the above named corporate defendants), Defendants.

Civ. No. 87–1387–FR.

United States District Court,
D. Oregon.

Feb. 9, 1989.

On Motion for Reconsideration
May 8, 1989.

**456**

Don S. Willner, Craig J. Dorsay, Don S. Willner & Associates, Portland, Or., for plaintiffs.

E. Richard Bodyfelt, Bodyfelt, Mount, Stroup & Chamberlain, Portland, Or., Sherrie E. Lipsky, Shea & Gould, Los Angeles, Cal., for defendants Cavenham Forest Industries Inc.; Cavenham Forest Industries Salaried Employees Involuntary Separation Salary Continuation Plan; Trustees of Cavenham Forest Industries Salaried Employees Involuntary Separation Salary Continuation Plan; Cavenham Forest Industries Retirement Plan for Salaried Employees; and Trustees of Cavenham Forest Industries Retirement Plan for Salaried Employees.

Lewis K. Scott, James W. Heller, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or., for defendants Crown Zellerbach Corp., Crown Zellerbach Salaried Employees Involuntary Separation Salary Continuation Plan; Trustees of Crown Zellerbach Salaried Employees Involuntary Separation Salary Continuation Plan; Crown Zellerbach Retirement Plan; Trustees of Crown Zellerbach Retirement Plan; and James River Corp. of Nevada.

FRYE, District Judge:

The matters before the court are the parties' cross-motions for summary judgment on the plaintiffs' first claim for relief.

## UNDISPUTED FACTS

In late 1984 and early 1985, Crown Zellerbach Corporation (Crown) became the target of a hostile takeover attempt by James Goldsmith and a group of companies in which Goldsmith had a controlling interest. As a response to this takeover attempt, Crown approved and implemented plans to provide enhanced benefits to employees in the event of a change of control.

Effective April 1, 1985, Crown adopted an enhanced severance program entitled the Crown Salaried Employees Involuntary Separation Salary Continuation Plan. In conjunction with the adoption of the Salary Continuation Plan, Crown amended its retirement plan by the adoption of Supplement C to the Crown retirement plan.

Plaintiffs, William B. Wallace, Jerry Bain, and Duane A. Guhlke, were salaried employees of Crown and were fully vested participants of the Crown retirement plan as of April 1, 1985.

In July, 1985, a change of control occurred when Crown's timber and wood products operations were transferred to a new subsidiary, Cavenham Forest Industries, Inc. (Cavenham).

In March, 1986, Crown and Cavenham entered into an Employee Benefits Agreement which provides for the relinquishment by Crown and the assumption by Cavenham of all responsibility and liability for benefits relating to employees who were to be transferred to employment with the soon-to-become independent Cavenham.

On May 5, 1986, Cavenham "spun-off" from Crown. On the same day, Wallace, Bain and Guhlke, separated from service with Crown and accepted employment with Cavenham.

On May 6, 1986,[1] Crown amended its retirement plans to delete *from the enhanced severance benefits and retirement benefits contained in Supplement C* Crown employees who transferred to the employment of Cavenham.

---

1. Some documents say May 5, 1986; others say May 6, 1986. The difference is not important to the result here.

The assets of the Crown retirement plan allocable to the accrued benefit values of Wallace, Bain and Guhlke were transferred to the Cavenham retirement plan effective as of January 1, 1986. The accrued benefit values which were transferred included all vested and accrued benefits payable at normal retirement age, but did not include any estimate of the values of Supplement C benefits for Wallace, Bain and Guhlke.

In October, 1986, Wallace and Bain were terminated by Cavenham. In December, 1986, Guhlke was terminated by Cavenham. Wallace, Bain and Guhlke were paid lump sum salary continuation benefits, but were paid no additional severance program benefits or Supplement C benefits. Wallace, Bain and Guhlke's claims for the benefits sought in this action were denied by the plan fiduciary.

The issue before the court is whether Wallace, Bain and Guhlke are entitled to enhanced severance and retirement benefits under the language of the Crown severance and retirement programs, despite the elimination of these benefits on May 6, 1986 by Crown.

## APPLICABLE LAW

Summary judgment is proper "if the pleadings, depositions answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c).

An ERISA plan administrator's decisions are to be upheld unless the decisions are "arbitrary or capricious." *Smith v. CMTA–IAM Pension Trust*, 654 F.2d 650, 654 (9th Cir.1981). ERISA trustees have "wide discretion 'short of plainly unjust measures' to decide questions of eligibility." *Hancock v. Montgomery Ward Trust*, 787 F.2d 1302, 1308 (9th Cir.1986). Any "reasonable" interpretation of the plan terms will be upheld. *Id.*[2]

**2.** It is difficult to give deference to the plan administrator's interpretation of the plan terms because no writing exists as to the administrator's reasoning. While the record includes a

## DISCUSSION

The parties move for summary judgment on both 1) the severance benefits program, and 2) the Supplement C benefits program. The court will discuss these programs separately.

### 1. *Severance Program*

Wallace, Bain and Guhlke assert that based upon the language of the Crown Salary Continuation Plan and the applicable ERISA law, they have vested and accrued severance benefits in the Salary Continuation Plan's severance program.

Cavenham asserts that the severance benefits sought by Wallace, Bain and Guhlke are contingent, unaccrued welfare benefits. Cavenham argues that Wallace, Bain and Guhlke were not eligible for the benefits because they were not involuntarily separated from employment prior to May 6, 1986, when Crown amended its severance program, which thereafter did not provide for any of the enhanced benefits previously provided under the Crown severance program. Cavenham further asserts that even if Wallace, Bain and Guhlke are eligible for severance benefits, the lump sum salary continuation benefits paid under Section III.B.4 fulfill defendants' obligations to Wallace, Bain and Guhlke.

Section III of the Change of Control/Restructuring Severance Program, provides at A.5 as follows:

A. *Eligibility for Change of Control/Restructuring Severance Program*

All active salaried employees of Crown Zellerbach and its U.S. subsidiaries as of April 1, 1985 who are Involuntarily Separated from Crown Zellerbach are eligible for Paid Terminal Leave under the Change of Control/Restructuring Severance Program except:

\*    \*    \*    \*    \*    \*

5. Employees who, in connection with the sale of an operation, are offered employment with a successor employer which acquires an operation, shall not receive benefits except in the event that such employees are Involuntarily

few pages from the administrator's deposition, no clear statement of the administrator's reason for denial of benefits is apparent.

Separated by the successor employer within two years from the Change of Control or within one year from the sale or other disposition of the subsidiary *or division, whichever period ends first,* in which case the employee will be entitled to the Salary Continuation provided in this Section III.

Wallace, Bain and Guhlke were involuntarily terminated by a successor employer within the time provided in Section III.A.5, entitling them to the salary continuation provided in Section III, Change of Control/Restructuring Severance Program. The only issue is the effect of the May 6, 1986 amendment to the Crown retirement plans made on May 6, 1986, which by its terms eliminates the enhanced severance and retirement benefits.

Section III.D of the Crown severance program provides:

D. *Right to Cancel or Modify Change of Control/Restructuring Severance Program*

The Change of Control/Restructuring Severance Program described above may be modified or cancelled at any time prior to a Change of Control. The benefits will be provided in the event of a Change of Control or restructuring, unless they are modified or cancelled prior to a Change of Control.

■ A change of control took place in July, 1985, with a subsequent sale on May 5, 1986. The modification of the severance program took place on May 6, 1986. As such, the modification was not effective in that it did not take place prior to the change of control as specifically provided in the terms of the Salary Continuation Plan.

Cavenham's assertion that Crown was entitled to modify the severance program at any time prior to the involuntary separation of Wallace, Bain and Guhlke from its employment is contrary to the clear provisions of Section III.D of the severance program.

Defendants next argue that the obligation under Section III of the severance program has been discharged by payment of a lump sum pursuant to Section III.B.4, which provides:

4. A lump sum payment equivalent to Paid Terminal Leave provided above will be paid to an eligible employee who, after a Change of Control, accepts employment with a successor employer in connection with the sale

of an operation *and* is Involuntarily Separated by the successor employer within two years of the Change of Control or within one year from the sale of the operation, whichever first occurs.

Wallace, Bain and Guhlke assert that the form of payment of the enhanced severance benefits is not an issue in this motion. They argue that if the change of control is unapproved as defined by the Crown severance program, they are entitled to paid terminal leave, health and insurance benefits during the period of paid terminal leave, increased eligibility for the Crown enhanced retirement program, and ninety days notice of termination. Wallace, Bain and Guhlke concede that Cavenham paid them lump sum payments, but contend that they are entitled to further benefits because the change of control was unapproved.

■ Section VI.D of the severance program in the Salary Continuation Plan defines involuntary separation, in part, as "involuntary termination of employment by Crown Zellerbach or its U.S. subsidiaries, and, in the case described in IIIA5 and IIIB4, by successor employers." Sections III.A.5 and III.B.4 provide for benefits for employees such as Wallace, Bain and Guhlke who have been involuntarily terminated by a successor employer within a specified period of time. Neither of these sections provide for different treatment when the change of control was an unapproved change of control.

The court finds that the plan administrator's actions were not arbitrary or capricious when he determined that Wallace, Bain and Guhlke were only entitled to lump sum benefits as stated in Section III.B.4.

Defendants' motion for summary judgment is granted as to Wallace, Bain and Guhlke's claims for severance benefits under their first claim for relief. Wallace, Bain and Guhlke's cross-motion as to severance benefits is denied.

2. *Supplement C Benefits*

Defendants argue that Wallace, Bain and Guhlke are not entitled to the enhanced benefits referred to in Supplement C as a matter of law. Defendants argue that: 1) Wallace, Bain and Guhlke are not eligible for the Supplement C benefits because they were not involuntarily separated before the amendment, and thus the benefits could be lawfully eliminated by Cavenham; 2) the Supplement C benefits sought by Wallace,

Bain and Guhlke are not retirement or retirement-type benefits at all, but rather are contingent, unaccrued severance benefits not within the meaning of ERISA's vesting, accrual, and non-forfeiture provision; and 3) Cavenham has, in any event, complied with all of its obligations under ERISA.

Wallace, Bain and Guhlke argue that: 1) they are eligible for the Supplement C benefits just as they are for the enhanced severance benefits since the eligibility requirements for both plans are the same; and 2) Supplement C benefits are nothing more than an addition to the retirement plan already in place; that the Supplement C benefits are best described as retirement-type benefits; and that Section 204(g) of ERISA, 29 U.S.C. § 1054(g), prohibits defendants from reducing those retirement-type benefits by subsequent plan amendment.

Defendants first assert that Wallace, Bain and Guhlke are not eligible for Supplement C benefits. Section One of Supplement C provides:

> Supplement C to the Crown Zellerbach Retirement Plan ("Supplement C") is established effective as of April 1, 1985. *The purpose of Supplement C is to provide special benefits in lieu of Early Retirement Benefits and Vested Benefits to eligible Participants who are involuntarily separated under the Severance Program.* Supplement C is a part of the Plan and shall be administered in accordance with the provisions thereof, except as expressly provided below. Capitalized terms used in this Supplement C and not defined herein shall have the same meanings as in the Plan or the Severance Program. (Emphasis added.)

(Cavenham Exh. 502).

The term "severance program" refers to the Change of Control/Restructuring Severance Program. This court has already found that Wallace, Bain and Guhlke have met the eligibility requirements of Section III.A.5 of the Change of Control/Restructuring Severance Program. However, Cavenham asserts that the Supplement C benefits were eliminated by amendment in May, 1986, after the employment of Wallace, Bain and Guhlke.

Wallace, Bain and Guhlke argue that the amendment to the retirement benefits by Crown and Cavenham in May, 1986 to eliminate the Supplement C benefits was not effective for the same reason that the amendment to the severance plan was not

effective. Section III.D of the Change of Control/Restructuring Severance Program states:

> The Change of Control/Restructuring Severance Program described above may be modified or cancelled at any time prior to a change of Control. The benefits will be provided in the event of a Change of Control or restructuring, unless they are modified or cancelled prior to a Change of Control.

■ Cavenham argues that Supplement C has no analogous provision and does not incorporate Section III.D by reference. However, Supplement C specifically states that "Supplement C is a part of the [Crown Salaried Employees Involuntary Separation Salary Continuation] Plan and shall be administered in accordance thereof, except as expressly provided below." Supplement C does not expressly provide any provision for cancellation or modification. As such, the court concludes that Section III.D of the Salary Continuation Plan, providing that modification or cancellation be made only prior to a change of control, applies to Supplement C.

Wallace, Bain and Guhlke further assert that defendants are prohibited from reducing Supplement C's retirement-type benefits by Section 204(g) of ERISA, 29 U.S.C.A. § 1054(g), which provides, in pertinent part:

> (g) Decrease of accrued benefits through amendment of plan.
>
> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan....
>
> (2) For purposes of paragraph (1), a plan amendment which has the effect of—
>
>> (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
>>
>> (B) eliminating an optional form of benefit,
>
> with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the pre-amendment conditions for the subsidy. The Secretary of Treasury may by regulations provide that this subparagraph shall not apply to a plan amendment described in subparagraph (B) (other than a plan amendment having an effect described in subparagraph (A)).

■ Section 204(g) prohibits plan amendments which result in a decrease of accrued benefits or which result in an elimination or reduction of early retirement benefits or retirement-type subsidies. *Ross v. Pension Plan for Hourly Employees of SKF Ind.,* 847 F.2d 329 (6th Cir.1988).

Cavenham asserts that Section 204(g) does not protect the benefits in Supplement C because Supplement C benefits are not retirement benefits at all, but some other type of benefits more akin to a severance benefit. Cavenham points out that Section One to Supplement C says that the benefits are provided "in lieu of Early Retirement Benefits and Vested Benefits," and that the benefits are conditioned upon involuntary separation from employment.

Wallace, Bain and Guhlke argue that Supplement C is part of the Crown retirement plan and, as such, the benefits offered are retirement-type benefits. Wallace, Bain and Guhlke point out that the benefits are conditioned on reaching a certain age just like other retirement benefits.

The full title to Supplement C is "Supplement C to the Crown Zellerbach Retirement Plan." (Cavenham Exh. 502). The legislative history to the Retirement Equity Act indicates that a retirement-type subsidy is a subsidy that "continues after retirement." S.Rep. No. 575, 98th Cong. 2d Sess. 30, *reprinted in* 1984 U.S.Code Cong. & Admin.News 2547, 2576. Benefits offered under Supplement C continue after retirement since they are payable for life. The benefits provided to employees by Supplement C are essentially the same retirement benefits offered in the original Crown retirement plan, but are to be paid without applying a discount factor for early retirement.

The fact that the Supplement C benefits are offered "in lieu of Early Retirement Benefits and Vested Benefits" does not require the court to conclude that they are not retirement-type benefits. This language only indicates that an eligible participant cannot receive both the special benefits provided under Supplement C *and* the Early Retirement Benefits and Vested Benefits under the Crown retirement plan.

The fact that eligibility is contingent upon involuntary separation does not require the court to conclude that Supplement C does not provide retirement-type benefits. Eligibility for Supplement C benefits is conditioned upon age and years of service as well as involuntary separation. The court concludes that the benefits under Supplement C are retirement-type benefits subject to the protections of Section 204(g) of ERISA.

■ However, the prohibition against reduction of a retirement benefit subsidy applies to a participant only if the participant meets the conditions imposed by the plan on the availability of the subsidy. *Ashenbaugh v. Crucible, Inc.,* 854 F.2d 1516 (3d Cir.1988).

■ In this case, Wallace, Bain and Guhlke were entitled to certain retirement-type benefits in the event that they were involuntarily terminated by a successor employer within one year of the sale of the subsidiary. On April 1, 1985, when Crown amended its retirement plan to include Supplement C benefits, Wallace, Bain and Guhlke were one hundred percent vested participants in that retirement plan. Supplement C incorporates the provisions in Section III.B of the severance program, which state that benefits will be provided unless modified or cancelled prior to a change of control. When the change of control took place without cancellation of Supplement C benefits, Crown and Cavenham lost their power to eliminate Supplement C benefits for employees who met the requirements of Section III.A.5. Wallace, Bain and Guhlke meet the conditions imposed by the plan, and thus are entitled to the protection of Section 204(g) of ERISA.

Wallace, Bain and Guhlke's motion for partial summary judgment on their first claim for relief is granted as to the issue of Supplement C benefits. Defendants' cross-motion as to Supplement C benefits is denied.

## CONCLUSION

Defendants' motion for summary judgment is granted as to Wallace, Bain and Guhlke's claims for severance benefits under their first claim for relief. Wallace, Bain and Guhlke's cross-motion as to severance benefits is denied.

Wallace, Bain and Guhlke's motion for partial summary judgment on their first claim for relief is granted as to the issue of Supplement C benefits. Defendants' cross-motion as to Supplement C benefits is denied.

In Motion For Reconsideration

FRYE, Judge:

In the matter before the court, plaintiffs move for reconsideration of that portion of

the court's Opinion and Order dated February 9, 1989 in which the court ruled that plaintiffs are not entitled to further enhanced severance benefits. In support of their motion for reconsideration, plaintiffs cite *Firestone Tire and Rubber Co. v. Bruch,* — U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), in which the Supreme Court adopted a *de novo* standard of review under the principles of the law of trusts in ERISA cases.

Defendants oppose reconsideration on the grounds 1) that the Opinion of the court indicates that the court conducted a *de novo* review consistent with the *Bruch* standard; 2) that the unambiguous plan provisions establish that plaintiffs received proper compensation pursuant to section III.B.4. of the severance plan; and 3) that there is no evidence to support any conclusion other than the one reached by this court in its decision.

### RULING

The change in the standard of review stated by the United States Supreme Court in *Bruch* requires reconsideration.

In its Opinion, the court explained in a footnote that "[i]t is difficult to give deference to the plan administrator's interpretation of the plan terms because no writing exists as to the administrator's reasoning. While the record includes a few pages from the administrator's deposition, no clear statement of the administrator's reason for denial of benefits is apparent." (Opinion, February 9, 1989, p. ——, n. 2). The undisputed fact that plaintiffs received the lump sum payments in accordance with section III.B.4. of the severance program, coupled with the unambiguous plan provision, requires the same result under the *de novo* standard of review.

Plaintiffs' motion (# 152) for reconsideration of this court's Opinion and Order dated February 9, 1989 is granted. The court has reconsidered its ruling in light of the decision of the United States Supreme Court in *Firestone Tire and Rubber Co. v. Bruch, supra.* This court adheres to its order dated February 9, 1989.

IT IS SO ORDERED.