United States Court of Appeals,
Fifth Circuit.

No. 92-3321.

Jan C. HARMS, et al., Plaintiffs-Appellees-Cross Appellants,

v.

CAVENHAM FOREST INDUSTRIES, INC., et al., Defendants-Appellants-Cross Appellees.

March 4, 1993.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before REAVLEY, SMITH, and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

In this case presenting claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (1985), defendants appeal the district court's grant of summary judgment in favor of the plaintiff employees' entitlement to certain severance and pension benefits. The employees cross-appeal, asserting as error the summary judgment against them on their claims to severance benefits as to one of the named defendants and the dismissal of their state law claims as preempted by ERISA, and seeking an award of their costs and attorney's fees incurred in pursuing this appeal. Although we agree with the district court's ultimate disposition of the case, our reasoning is different.

I.

Plaintiffs Jan C. Harms, Robert E. Heinz, Sue C. Magee, Timothy H. Rush, James T. Quitta, and Eddie Welch (the "beneficiaries") are former employees of Crown Zellerbach ("CZ") and Cavenham Forest Industries, Inc. ("CFI"). Attempting to fend off a hostile takeover bid, CZ developed for its employees—who controlled the largest bloc of outstanding CZ stock—an enhanced severance of employment program known as the CZ Change of Control/Restructuring Severance Program, which is an addition to the CZ Salaried Employees Involuntary Separation Salary Continuation Plan ("Continuation Plan") and constitutes part III of that plan. Also at this time, CZ added benefits to its separate Retirement Plan by means of a document entitled "Supplement C." The

effective date of both additions was April 1, 1985; the beneficiaries were employed by CZ as of that date. Employees became eligible for these additional benefits only in the event of a "change in control" of CZ.

In July 1985, the anticipated change of control took place, and CZ's various operations were split up, sold off, or taken over by other companies. CZ's Timber and Wood Products operation was acquired by CFI, which extended employment to the beneficiaries on May 5, 1986. By an Employee Benefits Agreement ("EBA") dated March 28, 1986, CZ previously had relinquished, and CFI had assumed, liability for benefits relating to CZ personnel who were shortly to be transferred to CFI. On May 6, 1986, immediately after the sale of the business to CFI and the transfer to it of CZ's former employees, CZ amended its Retirement Plan to eliminate Supplement C.

Within one year's time, each of the beneficiaries was involuntarily separated from CFI and received benefits pursuant to the CFI severance plan. Collectively, the beneficiaries already have received a total of $334,457.75 from CFI in lump-sum payments equivalent to the Paid Terminal Leave owed to them under the original CZ Involuntary Separation Program. The parties agree that the beneficiaries also are entitled to vested and accrued retirement benefits under the CFI Retirement Plan, to which, according to CZ and CFI, CZ's pension obligations were transferred.

Our dispute centers on the beneficiaries' contention that benefits are also owing to them under the CZ Severance Program and Supplement C and that these claims were wrongly denied. On October 26, 1988, the district court granted CFI's motion for partial summary judgment, concluding that the enhanced severance and Supplement C benefits properly were classified as employee welfare benefits, not pension benefits, and therefore were not subject to ERISA's vesting, accrual, and nonforfeitability provisions. As such, CFI's modification of its employee severance plan to exclude both these benefits did not violate ERISA.

By Memorandum and Order dated December 16, 1991, the district court again granted partial summary judgment, this time in favor of the beneficiaries, holding that they were entitled to both Paid Terminal Leave under the CZ Involuntary Separation Plan and Supplement C benefits under the CZ Retirement Plan. The court's ruling was leavened, however, by its grant of partial summary judgment

to CFI, to the effect that the beneficiaries could not collect the full amount of benefits owing under both the CZ and the CFI plans. While CZ legitimately could transfer its severance obligation to CFI, so long as it did not cancel or modify benefits, the court apparently reasoned, the beneficiaries were not entitled to a double-recovery windfall by way of collecting severance payments from both plans for their combined term of service with CZ/CFI.

## II.

On appeal of a district court's grant of summary judgment, we review *de novo* the court's application of the law to the evidence adduced before it. *Samaad v. City of Dallas,* 940 F.2d 925, 937 (5th Cir.1991). In cases involving the interpretation of an ERISA-covered plan, we likewise construe the terms of the plan *de novo,* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). The parties agree that the instant plans contain no language according any such authority to the plan fiduciaries.

Accordingly, we must look to the plan language as a guide to our *de novo* interpretation, buttressed only by admissible evidence as to the settlor's intent where the plan terms are ambiguous. *Id.* at 112, 109 S.Ct. at 954 (quoting RESTATEMENT (SECOND) OF TRUSTS § 4 cmt. d (1959)). We must defer, however, to the plan fiduciary's factual determinations made in the course of determining benefits eligibility, unless those determinations reflect an abuse of discretion. *Pierre v. Connecticut Gen. Life Ins. Co.,* 932 F.2d 1552, 1562 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991).

## III.

The first issue we address concerns the district court's 1991 order granting partial summary judgment in favor of the beneficiaries on their Supplement C claim. CFI disputes the order, contending that the beneficiaries are not eligible to receive Supplement C benefits.

To be eligible for Paid Terminal Leave, an employee first had to meet the eligibility requirements set out in section III.A. of the CZ Salary Continuation Plan. *See* Intro. to Summary

Plan Description. It is undisputed that sections III.A.5, III.B.4, and IV.D. of that plan apply to the beneficiaries, and CFI argues that the interpretation of these provisions governs the beneficiaries' eligibility for Supplement C benefits as well. The relevant paragraphs of the Plan's section III provide that

> [a]ll active salaried employees of Crown Zellerbach and its U.S. subsidiaries as of April 1, 1985 who are Involuntarily Separated from Crown Zellerbach are eligible for Paid Terminal Leave under the Change of Control/Restructuring Program except:
>
> ....
>
>> 5. Employees who, in connection with the sale of an operation, are offered employment with a successor employer which acquires an operation, shall not receive benefits except in the event that such employees are Involuntarily Separated by the successor employer within two years from the Change of Control or within one year from the sale or other disposition of the subsidiary or division, whichever period ends first, in which case the employee will be entitled to the Salary Continuation provided in this Section III.
>
> ....
>
> B.
>
> ....
>
>> 4. A lump sum payment equivalent to Paid Terminal Leave provided above will be paid to an eligible employee who, after a Change of Control, accepts employment with a successor employer in connection with the sale of an operation *and* is Involuntarily Separated by the successor employer within two years of the Change of Control or within one year from the sale of the operation, whichever first occurs.

Salary Continuation Plan at 5, 7.[1]

Pursuant to the above provisions, the beneficiaries received a lump sum payment equivalent to, and in lieu of, Paid Terminal Leave from the CFI Severance Program. CFI contends, however, that the excerpted provisions of the Severance Program unambiguously exclude Supplement C benefits from the range of benefits available to former CZ employees in the position of the

---

[1]Section IV.D. merely defines "involuntary separation." In pertinent part, it states,

> As used herein the term Involuntary Separation means involuntary termination of employment by Crown Zellerbach or its U.S. subsidiaries, and, in the case described in IIIA5 and IIIB4, by successor employers. Employees offered positions with Crown Zellerbach or a new company formed under the Restructuring will not be deemed to have been involuntarily separated for purposes of severance.

beneficiaries. CFI points to the language in Supplement C, stating its purpose "to provide special benefits in lieu of Early Retirement Benefits and Vested Benefits to eligible Participants who are involuntarily separated under the Severance Program." Retirement Plan at C-1 (Supplement C). These special benefits set forth in Supplement C, CFI argues, are logically entailed by section III.A.5's reference to "benefits" that employees similarly situated to the beneficiaries "shall not receive"—the sole exception being the lump sum Salary Continuation benefit specified in section III.B.4. Accordingly, CFI urges, the beneficiaries are entitled to the lump sum payment but are precluded from receiving Supplement C benefits.

Our review of the various plan documents refutes CFI's interpretation. Supplement C was adopted as an amendment to the CZ Retirement Plan, *not* the Salary Continuation Plan. In addition to being appended physically to the Retirement Plan, Supplement C's purpose is to provide special benefits in lieu of certain retirement benefits.[2] Although Supplement C benefits admittedly are limited to "eligible Participants who are involuntarily separated *under the Severance Program,*" *see* Retirement Plan at C-1 (emphasis added), it is not the Severance Program that sets forth the eligibility requirements for Supplement C benefits; rather, Supplement C specifies its own criteria.[3]

---

[2]Moreover, § 1 of Supplement C states that "Supplement C is a part of the Plan and shall be administered in accordance with the provisions thereof...." Retirement Plan at C-1. The phrase "part of the Plan" we believe refers to the Retirement Plan, to which Supplement C is a formal amendment. *But cf. Wallace v. Cavenham Forest Indus.,* 707 F.Supp. 455, 459 (D.Or.1989) (interpreting identical plans, but construing Supplement C as part of Salary Continuation Plan).

While we acknowledge the parties' stipulation that "Supplement C to the C/Z Retirement Plan was adopted as part of the C/Z severance program," *see* Uncontested Material Facts at 1 (number 4), we do not believe it compels the conclusion that eligibility for Supplement C should be determined with reference to the Severance Program. Rather, we view the stipulation merely as a reflection of the fact that Supplement C benefits are provided only to employees involuntarily separated from CZ, and that it was adopted contemporaneously with the Severance Program.

[3]Supplement C's eligibility terms are as follows:

SECTION 3. ELIGIBILITY FOR SPECIAL BENEFITS.

(a) *Early Retirement.* A Participant who incurs an Involuntary Separation on or after April 1, 1985, shall be entitled to the Special Early Retirement Benefit under Section 4(a) below in lieu of his or her Early Retirement Benefit if:

CFI concedes that the beneficiaries meet the literal terms of these criteria. Given our conclusion that Supplement C is a part of the Retirement Plan, and not the Salary Continuation Plan, CFI's argument that the limitation of benefits contained in section III.A.5 of the Salary Continuation Plan/Severance Program includes Supplement C benefits does not survive analysis. The Paid Terminal Leave that the Severance Program accords employees involuntarily separated is neither textually nor logically exclusive of Supplement C's Special Early Retirement Benefit. We find that the plain language of the various plan documents supports the beneficiaries' eligibility to receive Supplement C benefits.

That conclusion, however, does not necessarily compel our finding that the beneficiaries are entitled to receive Supplement C benefits, inasmuch as CFI contends that CZ modified the Severance Program to eliminate Supplement C benefits on May 6, 1986. The district court rejected CFI's reliance upon that amendment because of the wording of section III.D. of the Salary Continuation Plan, which prohibits the cancellation or modification of Severance Program benefits following a change of control.[4]

> (i) The Participant has a five-year Period of Service and has attained age 55 at the time of his or her Involuntary Separation; or
>
> (ii) The Participant has a five-year Period of Service and attains age 55 during his or her Paid Terminal Leave (as defined in the Severance Program).
>
> (b) *Vested Benefit.* A Participant who incurs an Involuntary Separation on or after April 1, 1985, and who is not eligible for the Special Early Retirement Benefit shall be 100% vested in the Special Vested Benefit under Section 4(b) below in lieu of his or her Vested Benefit (if any).

Retirement Plan at C-1, C-2.

[4]Section III.D. of the CZ Severance Program provides,

> D. *Right to Cancel or Modify Change of Control/Restructuring Severance Program*
>
> The Change of Control/Restructuring Severance Program described above may be modified or cancelled at any time prior to a Change of Control. The benefits will be provided in the event of a Change of Control or restructuring, unless they are modified or cancelled prior to a Change of Control.

In light of our conclusion above that Supplement C benefits are not to be deemed a part of the Severance Program for purposes of determining eligibility, we cannot agree with the district court that section III.D. bars the amending of Supplement C benefits after a change of control. Section III.D. does not incorporate Supplement C by reference; indeed, by its own terms its application is limited to "[t]he Change of Control/Restructuring Severance Program described above...." Supplement C, we reiterate, is appended to the Retirement Plan; it is not included in the Salary Continuation Plan of which section III.D. is a part. It would be an odd construction of the plans at issue in this case to deem Supplement C a part of the Severance Program for purposes of applying section III.D.'s non-cancellation provision, but not when applying section III.A.5's limitation of benefits.

Even though section III.D. thus poses no obstacle to CZ's post-change-of-control cancellation of Supplement C, that cancellation may yet have been barred by operation of section 204(g)(2) of ERISA, 29 U.S.C. § 1054(g)(2), which prohibits the elimination or reduction of retirement benefits that have already vested or accrued.[5] If Supplement C contains the type of early

---

Salary Continuation Plan at 8.

[5]Section 204(g) provides in pertinent part as follows:

> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) of this title.

> (2) For purposes of paragraph (1), a plan amendment which has the effect of—

> (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

> (B) eliminating an optional form of benefit,

> with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy.

29 U.S.C. § 1054(g) (1985). *See generally Berger v. Edgewater Steel Co.,* 911 F.2d 911, 918 (3d Cir.1990) (applying § 204(g)), *cert. denied,* --- U.S. ----, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991). CFI does not argue that CZ's May 6, 1986, amendment complied

retirement or retirement-type benefits protected by ERISA, then section 204(g) may prevent its cancellation, at least to the extent that Supplement C's benefits may be deemed to have accrued to the beneficiaries. Because the district court's October 26, 1988, summary judgment order held that Supplement C provided a welfare-type, and not a retirement-type, benefit, and therefore could not be protected by section 204(g), we must review the correctness of this determination before finally deciding whether the beneficiaries are entitled to receive Supplement C benefits.

## IV.

In addition to its status as an amendment to the CZ Retirement Plan, Supplement C bills itself as a benefit "in lieu of Early Retirement Benefits and Vested Benefits." Retirement Plan at C-1. Moreover, its benefits are offered to discharged employees in lieu of their normal retirement benefits and are payable for life. In a case involving the application of the identical plans to a similar set of circumstances, an Oregon district court noted that "[t]he benefits provided to employees by Supplement C are essentially the same retirement benefits offered in the original Crown retirement plan, but are to be paid without applying a discount factor for early retirement." *Wallace,* 707 F.Supp. at 460.

Nonetheless, the district court in the instant case determined that Supplement C benefits were best viewed as contingent, unaccrued welfare benefits unprotected by section 204(g).[6] Although acknowledging the retirement-like aspects of the Supplement C benefits, the court ultimately found as dispositive the fact that eligibility is contingent upon an employee's involuntary separation from CZ.[7] Admitting the absence of caselaw directly on point, the court relied upon two cases in which arguably retirement-type benefits were deemed welfare-type severance benefits because conditioned

---

with ERISA § 1082(c)(8), which otherwise would nullify the application of § 204(g).

[6]Pursuant to 29 U.S.C. § 1051(1), ERISA's vesting, accrual, and non-forfeitability provisions (contained in part 2 of ERISA) do not apply to an employee welfare benefit plan. An employer thus may modify or cancel such benefits without falling afoul of ERISA. *See Sutton v. Weirton Steel Div. of Nat'l Steel Corp.,* 724 F.2d 406, 410 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984).

[7]Under 29 U.S.C. § 1002(2)(B)(i), severance pay arrangements are deemed to be employee welfare plans for purposes of ERISA. *See also* 29 C.F.R. § 2510.3-1(a)(3).

upon the occurrence of a plant shutdown. *See Ross v. Pension Plan for Hourly Employees of SKF Indus.,* 847 F.2d 329, 332-34 (6th Cir.1988); *Flinchbaugh v. Chicago Pneumatic Tool Co.,* 531 F.Supp. 110, 114 (W.D.Pa.1982). Analogizing plant shutdowns to the hostile takeover and spin-off of operations at issue here, the court concluded that the caselaw supported its emphasis on the severance-based condition attached to the Supplement C benefits.

The cases relied upon by the district court are, we believe, distinguishable from the instant case. *Flinchbaugh,* for example, involved the interpretation of a plan that expressly granted broad discretion to the pension trustees to determine eligibility. Where an ERISA plan so provides, *Firestone* permits a reviewing court to sustain the plan administrator's or fiduciary's determination so long as it was not arbitrary or capricious. It is precisely that standard that the *Flinchbaugh* court applied in upholding the plan trustees' characterization of the plant shut-down benefits at issue there as a severance allowance. *See Flinchbaugh,* 531 F.Supp. at 113 ("If the actions of the trustees in determining pension eligibility are not arbitrary or capricious then we must confirm those actions.").

*Ross* presents a rather more persuasive case, inasmuch as the plan vested no discretion in the administrator, and the eligibility requirements for the benefits at issue closely resembled those set out in Supplement C. *See Ross,* 847 F.2d at 333 (describing plant shut-down benefit payable to participant with fifteen years' service and whose service ceases because of permanent plant shutdown, provided that he is at least fifty-five years old or his combined age and service equal or exceed eighty). *Ross* rejected the contention that such a benefit constitutes a retirement-type subsidy within the meaning of section 204(g).

The conclusion in *Ross* was predicated, however, upon the express statement in the legislative history of the 1984 amendment to section 204(g)(2) to the effect that "a plant shutdown benefit (that does not continue after retirement age) will not be considered a retirement-type subsidy." 847 F.2d at 334. The history additionally exempts qualified disability, medical, and death benefits, and social security supplements from the definition of "retirement-type subsidy," while stating as the general rule that "[t]he Committee intends that under these regulations, a subsidy that continues after retirement is generally to be considered a retirement-type subsidy." *Id.* at 333.

Significantly enough for the application of this general rule, Supplement C benefits—both the Special Early Retirement Benefit set out in section 4(a) and the Special Vested Benefit provided in section 4(b), *see* Retirement Plan at C-2—are payable for life. Moreover, these benefits are calculated similarly to retirement subsidies in general—by multiplying the participant's final average pay figure (the "Dollar Amount") by his years of service—and the age and service eligibility requirements (age fifty-five and minimum five years' service) are substantially the same. *Compare* Retirement Plan at 7 *with id.* at C-1.

Lastly, when one is calculating the Supplement C benefits, "a Participant's Period of Benefit Service shall not include any period during which the Participant receives Paid Terminal Leave." Retirement Plan at C-2, §§ 4(a), 4(b). This exclusion, from the calculation of Supplement C benefits of the period during which Paid Terminal Leave is provided pursuant to the Severance Program, confirms our conclusion that Supplement C does not duplicate severance obligations but is, in fact, a retirement-type subsidy protected by ERISA section 204(g). We are bolstered in this result by the identical conclusion reached in the only published opinion previously reviewing these plans. *See Wallace,* 707 F.Supp. at 460.

As noted above, section 204(g) prohibits the elimination or reduction of the Supplement C benefits by plan amendment "with respect to a participant who satisfies (*either before or after the amendment* ) the preamendment conditions for the subsidy." 29 U.S.C. § 1054(g)(2) (emphasis added). It is undisputed that the beneficiaries met the age and service requirements imposed by Supplement C at the time of their termination. The sole remaining eligibility requirement is that the beneficiaries incur an involuntary separation within the meaning of sections III.A.5 and III.B.4 of the Salary Continuation Plan.[8]

The beneficiaries eventually did fulfill this final requirement but, as CFI points out, not before

---

[8]Section IV.D. of the Salary Continuation Plan defines "Involuntary Separation" for the purpose of applying the Plan and Supplement C. *See* Retirement Plan at C-1 ("Capitalized terms used in this Supplement C and not defined herein shall have the same meanings as in the [Retirement] Plan or the Severance Program."). In the case of employees in the position of the Beneficiaries, § IV.D. provides that the strictures of §§ III.A.5 and III.B.4 (separation must be within two years of Change of Control or one year of sale of subsidiary, whichever date is earliest) determine eligibility.

CZ's May 6, 1986, amendment of its Plan to eliminate Supplement C benefits. Nevertheless, the beneficiaries have met all the preamendment conditions for Supplement C benefits; the fact that they have satisfied them only *after* the amendment is, as we read section 204(g), irrelevant. These were, in short, vested pension benefits that had accrued and could not be reduced or eliminated by subsequent plan amendment. Although we reach our conclusion based upon an analysis different from that employed by the district court, we agree with it that summary judgment in favor of the beneficiaries on this issue was proper.

V.

We next consider whether the district court was correct in its December 16, 1991, summary judgment ruling that the beneficiaries were not entitled to severance benefits from Crown Zellerbach. It is undisputed that the beneficiaries were involuntarily separated by CFI within the period required under sections III.A.5. and III.B.4, that the Severance Program was intended to, and did, apply to employees in the beneficiaries' position, and that neither CZ nor the CZ Salary Continuation Plan has paid beneficiaries any severance benefits. The beneficiaries contend that they are entitled to Paid Terminal Leave from CZ in addition to that which they have received under CFI's separate severance plan and that the district court erred in holding otherwise.

CFI counters that it expressly assumed CZ's obligation in the 1986 Employee Benefits Agreement. Under the EBA, CFI assumes the liability for severance benefits payable to "CFI employees," which term includes beneficiaries. CFI states that it incorporated the CZ Paid Terminal Leave benefits into its severance plan and that, by paying beneficiaries pursuant to that plan, it satisfied CZ's obligation.[9]

_____

[9]The EBA sets out the terms of CFI's assumption of CZ's pension obligations as follows:

> 2. *CFI Employees.* CFI agrees that, as of the Effective Date [of the subsidiary's sale], CFI will be responsible for wages, salaries and other employee benefits in accordance with the provisions of this Agreement for the following employees ...

> (c) any employee of Crown or an affiliated company who is not employed by or in connection with the CFI Businesses or the Energy Properties as of the Effective Date but who, with the consent of CFI, becomes an employee of CFI (including employment in connection with the Energy Properties)

Section III.D. of the CZ Severance Plan forbids attempted modifications or cancellations of benefits after a change of control has occurred. The beneficiaries rely upon this provision for the proposition that CFI's attempt to substitute its own plan for CZ's was impermissible. Although the EBA and CFI's severance program were created after the change of control, the district court dismissed the beneficiaries' argument on the grounds that CFI had merely sought to fulfill its obligations under the EBA and accordingly to compensate the beneficiaries for the benefits owed them by CZ by means of adopting its own plan, and that no redundant benefit had been intended.

The district court correctly resolved this issue. There is no provision in the CZ Plan prohibiting transfer of its obligation to pay severance benefits to another entity. Nor is any such transfer necessarily a modification of such benefits, so long as the CFI plan does not reduce the benefits already accrued to beneficiaries by virtue of their service to CZ.[10] What the beneficiaries seek, as they forthrightly conceded at oral argument, is merely a double-recovery windfall—a result abhorred by ERISA. *See, e.g., Lakey v. Remington Arms Co.,* 874 F.2d 541, 545 (8th Cir.1989) (citing cases).

## VI.

In its March 11, 1988, Minute Entry, the district court dismissed, as preempted by ERISA, the beneficiaries' pendent state law claims of breach of fiduciary duty, breach of duty of good faith and fair dealing, and negligent and intentional misrepresentation of the terms and conditions of employment. ERISA section 514(a) provides that "the provisions of this subchapter ... shall

within 60 days after the Effective Date....

EBA at 2-3. *See also id.* at 5:

> CFI assumes the liability for any employee-related liabilities with respect to CFI Employees and their dependents that are payable on or after the Effective Date, without regard to when the liabilities arose, including, without limitation ... severance benefits....

[10]*See Dougherty v. Chrysler Motor Corp.,* 840 F.2d 2, 4 (6th Cir.1988) (upholding transfer from prior to successor employer where plaintiff employees would have received same benefits under successor plan on day after transfer as they were entitled to under predecessor plan on day before sale of business); *cf.* ERISA § 208, 29 U.S.C. § 1058 (permitting transfer of assets in connection with sale of business provided accrued *retirement* benefits after transfer are same or better than before).

supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a) (1985). Because the Supreme Court has declined to extend this broad language to its outermost contours, *see Shaw v. Delta Air Lines,* 463 U.S. 85, 97-99, 103 S.Ct. 2890, 2900-01, 77 L.Ed.2d 490 (1983), we must ask "whether the state law affects relations among the principal ERISA entities." *Sommers Drug Stores v. Corrigan Enters.,* 793 F.2d 1456, 1468 (5th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837, 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987).

ERISA's preemptive scope thus may be considerable. In *Sommers,* however, we found no preemption of a state law claim for breach of fiduciary duty where the facts that the corporate director was an ERISA plan fiduciary and that the shareholder was the ERISA plan were incidental and fortuitous circumstances entirely unrelated to the facts underlying the cause of action. *See id.* at 1470. The district court rejected the beneficiaries' attempt to come within *Sommers,* asserting that the denial of benefits under CZ's and CFI's severance and retirement plans, and the representations made as to the benefits available under the plans, constituted the essence of the beneficiaries' state law claims. The heart of these claims undeniably relates to the employee benefit plan and to relations among the principal ERISA entities. The district court did not err in holding that the beneficiaries' state law claims are preempted.

## VII.

Lastly, the beneficiaries assert that they are entitled to an award of court costs and attorney's fees for expenses incurred in appealing their successful ERISA-based claims. ERISA provides that a court "in its discretion may allow a reasonable attorney's fee and costs...." 29 U.S.C. § 1132(g)(1). The "bottom-line question" as to whether an award is warranted is whether "the losing party's position [was] substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Production & Maintenance Employees' Local 504 v. Roadmaster Corp.,* 954 F.2d 1397, 1405 (7th Cir.1992) (quoting *Meredith v. Navistar Int'l Transp. Corp.,* 935 F.2d 124, 128 (7th Cir.1991)).

Plainly, the arguments advanced by CFI in this case had substantial justification; indeed, it

succeeded in obtaining from the district court a well-reasoned opinion finding in its favor, at least insofar as the court determined that Supplement C provided only welfare benefits. While we are confident in the correctness of our conclusions, we acknowledge that this case presents several unsettled and close questions of law. We cannot say the district court abused its discretion in denying the beneficiaries an award of costs and attorney's fees.

AFFIRMED.