United States Court of Appeals,
Fifth Circuit.

No. 94-30512

Summary Calendar.

James F. WILLIAMS, Plaintiff-Appellant,

v.

PLUMBERS & STEAMFITTERS LOCAL 60 PENSION PLAN, Defendant-Appellee.

April 5, 1995.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before DUHÉ, WIENER and STEWART, Circuit Judges.

DUHÉ, Circuit Judge.

James Williams appeals the district court's summary judgment in favor of the Plumbers and Steamfitters Local 60 Pension Plan (the Plan) denying Appellant's claims for Plan benefits. We affirm.

Appellant Williams participated in the Plan which provides pension, disability, and death benefits to eligible participants. From 1978 until 1985, Williams earned 6.5 years of service credit. In 1986, when he was no longer earning service credits, Williams was injured in an automobile accident, but he did not claim Plan benefits. In 1987, the Trustees amended the Plan to increase the minimum service credits required to receive disability benefits from 5 to 10 years. Notice of the 1987 amendment was mailed to all participants, and it was attached to the Summary of Plan Descriptions ("SPD") distributed to new participants.

Williams was injured in a second automobile accident in 1988. Thereafter, he applied for disability benefits from the Social Security Administration ("SSA") which determined that he was disabled in 1988. In 1990 Williams applied to the Plan for disability benefits. The Plan denied his application because, although he was disabled in 1988, he did not have the required 10 years of service credits.

Williams sued the Plan contending that the terms of the SPD, which did not reflect the amendment, governed over the terms of the Plan. He also claims that his interest in the Plan vested

in 1986, when he became disabled, and that the Trustees could not thereafter eliminate his interest.

The district court granted summary judgment in favor of the Plan because: (1) The disability benefit provision of the Plan was an "employee *welfare* benefit plan" rather than an "employee *pension* benefit plan" and, consequently, it was not subject to the vesting, accrual, or nonforfeiture provisions of ERISA. (2) Regardless of the plan type, Williams' interest in the disability benefits could not accrue until 1988, the year that the Trustees determined Williams to be disabled. (3) The Trustees' disability determination was not an abuse of discretion. (4) The court rejected Williams' argument that the terms of the unmodified SPD controlled, and determined that the means employed by the Plan to notify its participants of the amendment comported with ERISA and its regulations. Williams appealed.

DISCUSSION:

Williams attacks the validity of the 1987 amendment increasing the minimum required service credits from 5 years to 10 years on several grounds.

*a. Does it violate ERISA's anti-cutback provision?*

Williams first argues that ERISA's § 204(g) prohibits the 1987 amendment because the amendment decreased his interest in a retirement-type subsidy. He, however, does not directly challenge the district court's finding that the disability plan was an employee welfare benefit plan. Because ERISA's vesting, accrual, and nonforfeiture provisions do not apply to an employee welfare benefit plan, § 204(g) is not applicable. *Harms v. Cavenham Forest Indus.,* 984 F.2d 686, 691 n. 6 (5th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 382, 126 L.Ed.2d 331 (1993); *see* 29 U.S.C. § 1051(1).

Even if § 204(g) applied, Williams' argument fails. Section 204(g) prohibits plan amendments that eliminate or reduce *inter alia,* retirement-type subsidies or early retirement benefits. 29 U.S.C. § 1054(g). Although the regulations do not define a "retirement-type subsidy," the legislative history makes clear that the term does not include disability benefits:

> The committee intends that under these regulations, a subsidy that continues after retirement is generally to be considered a retirement-type subsidy. The committee expects, however, that *a qualified disability benefit,* a medical benefit, a social security supplement, a death benefit (including life insurance), or a plan shutdown benefit (that does not continue after

retirement age) *will not be considered a retirement-type subsidy.*

S.Rep. No. 575, 98th Cong., 2d Sess. 30, *reprinted in* 1984 U.S.C.C.A.N. 2547, 2576, *quoted in Ross v. Pension Plan for Hourly Employees of SKF Indus., Inc.,* 847 F.2d 329, 333-34 (6th Cir.1988) (emphasis added). *See also Harms,* 984 F.2d at 692 ("The [legislative] history exempts qualified disability, medical, and death benefits ... from the definition of "retirement-type" subsidy...."). Accordingly, the Plan's disability benefits cannot be considered a "retirement-type subsidy" protected by § 204(g) of ERISA.

Williams nevertheless argues, relying on *Harms,* that these disability benefits he seeks are retirement-type subsidies because they are payable for life and calculated in a manner similar to retirement subsidies in general. As the Sixth Circuit did in *Ross,* we rely upon the legislative history to conclude that the disability benefits Appellant seeks are not a "retirement-type subsidy" under § 204(g). *Ross,* 847 F.2d at 334.

Williams also contends that the benefits are "an early retirement benefit" and, thus, protected under § 204(g), and alternatively, that the Plan by its own terms views the disability benefits as a pension benefit. Because Appellant raises these arguments for the first time on appeal, we do not address them. *Topalian v. Ehrman,* 954 F.2d 1125, 1131-32 & n. 10 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992) (party challenging the grant of summary judgment may not advance new theories or raise new issues on appeal).

*b. Was the 1987 amendment properly noticed?*

Appellant argues that the Plan failed to comply with ERISA's notice provisions therefore the unmodified SPD should govern over the contradictory Plan provisions.

The SPD must be "sufficiently accurate and comprehensive to reasonably apprise" plan participants of their rights and obligations under the Plan. 29 U.S.C. § 1022(a)(1); *see Hansen v. Continental Ins. Co.,* 940 F.2d 971, 981 (5th Cir.1991). A summary of material modifications (SMM) to the plan must be provided to all plan participants in a timely manner. 29 U.S.C. §§ 1022(a)(1) and 1024(b)(1).

Williams contends that the Plan failed to indicate in its letter to plan participants that the

notification "should be read and retained for future reference" and that it contains "important information about rights under the plan." 29 C.F.R. § 2520.104b-1(b)(1). Williams misinterprets the regulation. Its requirements apply only when the notice of the modification is disseminated as a special insert in a periodical distributed to the employees, such as a union newsletter. *Id.*

Williams also attacks the Plan's failure to prove that Williams received the letter.[1] There is no requirement that the Plan prove actual notice of an amendment absent a showing of active concealment or some significant reliance upon, or prejudice resulting from the lack of notice. *Godwin v. Sun Life Assurance Co.,* 980 F.2d 323, 328 (5th Cir.1992). The plan administrator need only use whatever means are "reasonably calculated to ensure actual receipt of the material." 29 C.F.R. § 2520.104b-1(b)(1). The plan administrator may send the SMM by mail. *Id.* The Plan advisor stated, by sworn affidavit, that he prepared and had mailed a letter to all Plan participants notifying them of the amendment requirement and that a copy of the letter was attached to SPDs distributed to new Plan participants.

Williams does not allege concealment or significant reliance. He attempts to distinguish *Godwin* on the basis that the plan administrator in *Godwin* distributed a revised SPD rather than a letter to update plan participants as was done here. This distinction is immaterial. Neither Godwin nor Williams contend that they received actual notice; because neither claims to have received the notice, the particular means used to inform plan participants is unimportant.

Williams' reliance on *Hansen* is also misplaced. In *Hansen,* the court held that statements in a SPD are binding and will govern if the statements in the SPD conflict with the Plan. *Hansen,* 940 F.2d at 981. The SPD in *Hansen* conflicted with the terms of the Plan. *Id.* at 980-81. In contrast, the SPD in the instant case accurately summarized the Plan prior to the 1987 amendment. The "conflict" arose only after the Plan was amended and the SPD was not revised and reissued. But, because the SPD was properly supplemented by a SMM, there is no conflict between the supplemented SPD and the Plan.

---

[1]Williams complains for the first time on appeal that the Plan did not establish the address used to contact participants. We do not address this new issue. *Topalian,* 954 F.2d at 1131-32 & n. 10.

Appellant also cites the Plan's failure to file the SMM with the Department of Labor as required by 29 U.S.C. §§ 1024(a)(1)(D) and 1022(a)(2). Williams complains that as a result of the Plan's failure, he could not discover the 1987 amendment by examining the Department files. Williams does not allege that he examined the files and thereafter relied upon the absence of the SMM. Under the circumstances, the Plan's omission was not significant.

*c. Was the 1987 amendment formally adopted?*

Appellant claims that the amendment was not effective because it was never formally adopted into the Plan. As the Third Circuit explained in *Confer v. Custom Eng'g Co.,* 952 F.2d 41, 43 (3d Cir.1991), only an amendment executed in accordance with the Plan's own procedures and properly noticed could change the Plan. *Id.* at 43.

The Plan, effective when the amendment was adopted, provided that the Trustees could amend the Plan at any time, subject to ERISA and IRS limitations not at issue here. The amendment was presented and approved during a meeting of the Trustees. A written notice of the change was mailed to Plan participants. Accordingly, Williams' assertion that the amendment was not formally adopted is without merit.

Appellant also argues that he was disabled in 1986, and that, therefore, the district court erred when it upheld the Trustees' contrary determination because the Trustees abused their discretion by neglecting the only medical evidence offered.[2]

We review *de novo. Sweatman v. Commercial Union Ins. Co.,* 39 F.3d 594, 601 (5th Cir.1994).

The 1987 Plan[3] required the Trustees to determine whether an employee is totally and permanently disabled and provided that the Trustees "shall accept as evidence" a SSA determination that the employee is disabled. Given the SSA determination of Williams disability, the weight afforded that determination under the Plan, and Williams' delay in filing his claim until after the second

[2]Williams also argues for the first time on appeal that the SSA determination that Williams' date of disability was 1988 did not preclude a finding that Williams was disabled before 1988. We do not address this claim. *Topalian,* 954 F.2d at 1131-32 & n. 10.

[3]The 1987 Plan governs because it was properly amended as discussed above.

auto accident, it was not unreasonable or an abuse of the Trustees' discretion to find the date of disability to be 1988.[4]

Williams also seeks prejudgment interest. Because the district court properly granted summary judgment against Williams this issue is moot.

AFFIRMED.

---

[4]Williams argues that the 1987 amendment was ineffective because amendments may only have a prospective effect. Because Williams was disabled in 1988, the Trustees did not apply the 1987 amendment retroactively.